CITY OF GRAND RAPIDS v GRAND RAPIDS LODGE NO 97,
FRATERNAL ORDER OF POLICE

Docket No. 65303. Argued April 8, 1981 (Calendar No. 10).—Decided
December 23, 1982.

   Ronnie F. Stevens was involved in a shooting in the course of his
   duties as a police officer for the City of Grand Rapids. As a
   result of the shooting, a civil action was brought in the United
   States District Court for the Western District of Michigan
   against Stevens, the city, and the city's police chief. Stevens
   asked the city to assume the costs of his defense and to
   indemnify him against any judgment pursuant to the collective-
   bargaining agreement between the city and Grand Rapids
   Lodge No. 97, Fraternal Order of Police. The city refused, and
   the union filed a grievance on Stevens' behalf. Thereafter,
   Stevens filed a cross-claim against the city in the federal action,
   seeking costs and indemnification. The union then filed a
   demand for arbitration under the agreement. The city there-
   upon brought an action in Kent Circuit Court against the
   union, Stevens, and the American Arbitration Association,
   seeking to enjoin the arbitration on the ground that the collec-
   tive-bargaining agreement expressly excluded arbitration of a
   grievance upon the election of a member of the bargaining unit
   to seek a remedy in administrative or judicial proceedings. The
   circuit court, Roman J. Snow, J., granted the injunction. The
   Court of Appeals, R. B. Burns and J. H. Gillis, JJ. (D. F. Walsh,
   dissenting), reversed and set aside the injunction (Docket No.
   78-5449). The city appeals.
       In an opinion by Justice Levin, joined by Chief Justice

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 48A Am Jur 2d, Labor and Labor Relations § 1840.
   Breach or repudiation of collective bargaining contract, as subject
      to, or as affecting right to enforce, arbitration provision in con-
      tract. 29 ALR3d 688.
[2] 48A Am Jur 2d, Labor and Labor Relations § 1838.
[4] 48A Am Jur 2d, Labor and Labor Relations § 1932.
[5, 6] 48A Am Jur 2d, Labor and Labor Relations §§ 1854, 1855.
[7] 48A Am Jur 2d, Labor and Labor Relations § 1862.
[8, 9, 11, 12] 48A Am Jur 2d, Labor and Labor Relations §§ 1766,
   1768.
[10] 48A Am Jur 2d, Labor and Labor Relations § 1773.

Fitzgerald and Justices Kavanagh, Coleman, and Ryan, the Supreme Court *held:*

A collective-bargaining agreement which provides for arbitration as the final step in a grievance procedure may validly provide that grievance proceedings shall terminate where an employee claiming to be aggrieved by the employer's breach submits the subject matter of the grievance to adjudication in a court of law.

1. The public employment relations act requires an employer and a union to meet and bargain in good faith regarding grievance procedures, but is neutral with respect to the means of resolving a grievance. The parties have no obligation under the act to agree to any particular procedure. While arbitration has become the favored procedure for resolving grievances in federal and Michigan labor relations, it is a matter of contract, and there is no requirement that grievances be resolved by arbitration. The preference for arbitration in Michigan and federal labor law does not override the intent of the parties. It is by enforcing the agreement of the parties to arbitrate that the law "prefers" arbitration. The law does not require the employer, the union, or union members to forego judicial resolution of disputes pertaining to an agreement.

2. If a grievance arises under a collective-bargaining agreement, including a dispute regarding its construction, there is a duty to bargain over the grievance. If the agreement provides a method or procedure for addressing a grievance, it must be observed. Where no method or procedure is specified, the parties must negotiate in good faith. The act does not compel a particular form of dispute resolution or that the parties even need to resolve the grievance, only that the parties negotiate with respect to the grievance.

3. Generally, where a collective-bargaining agreement provides a grievance resolution procedure, including arbitration, the parties are required to exhaust the procedure before initiating a suit. However, where arbitration is not a mandatory final step, a union member aggrieved by a breach of the agreement may resort to an action at law to obtain satisfaction. Commencement of such an action might not relieve an employer of its obligation to negotiate concerning the grievance with the union, but the union may give up its right to negotiate over grievances.

4. In this case, the agreement provided that if a suit were commenced by an employee, the grievance proceedings would

end. The union had no right to continue to pursue the grievance after the cross-claim by Stevens was filed.

Reversed.

Justice Williams, dissenting, would hold:

1. The provision in the collective-bargaining agreement which ended the grievance procedure under the agreement upon an individual bargaining-unit member's election to seek redress in a judicial forum is invalid as violative of the public employment relations act and the principle of exclusive representation. Therefore, the parties must submit to arbitration the question of the city's responsibility to assume the costs of Stevens' defense and to indemnify him against any judgment in the federal action.

2. A fundamental principle of labor law is that of exclusive representation. The public employment relations act provides that the representative selected by the majority of public employees in a bargaining unit is the exclusive representative of the members of the unit for the purpose of collective bargaining. Although it allows for direct settlement of grievances between an employer and an employee, the position of the exclusive representative is protected by providing that it have an opportunity to participate in any grievance adjustment and by providing for adjustments not inconsistent with the terms of the collective-bargaining agreement. These provisos allow the union to carry out its obligations to see that the individual member is treated fairly, and also to protect other members and the collective-bargaining agreement itself. Arbitration of labor disputes under collective-bargaining agreements is part of the collective-bargaining process itself.

3. The election-of-remedies clause in dispute in this case is invalid for two reasons: first, it offends the principle of exclusivity of representation by preventing the union from representing its members in a grievance procedure when an individual member elects another forum; second, it does not provide that the adjustment between employer and employee must not be inconsistent with the collective-bargaining agreement, nor does it give the representative an opportunity to be present at the adjustment meeting. The clause presents the very real possibility that the individual's grievance adjustment through another forum would be inconsistent with the collective-bargaining agreement and thus undermine it.

4. To be excluded from arbitration under a collective-bargaining agreement, a matter must be expressly excepted in the agreement or must be proved by forceful evidence to have been intended to be excluded. Where the attempted exclusion is

violative of fundamental labor principles and statutory provisions, it will be held to be invalid.

5. The union was not precluded from challenging the election-of-remedies clause merely because that clause was included in the agreement. It appears that the legal implications of the clause were discussed in the course of compulsory arbitration of the agreement and that the clause was included at the instance of the city with the understanding that its validity could be tested later.

6. The fact that a grievant may be able to proceed to arbitration to adjust his grievance and also to seek redress in a court under the provisions of the collective-bargaining agreement is an insufficient reason to declare the election-of-remedies clause valid. The desire to avoid duplication of proceedings cannot be used to deny the union its right to assure the satisfactory adjustment of the grievance under the agreement.

96 Mich App 226; 292 NW2d 529 (1980) reversed.

## OPINION OF THE COURT

1. LABOR RELATIONS — ARBITRATION — GRIEVANCES — TERMINATION OF PROCEEDINGS.

A collective-bargaining agreement which provides for arbitration as the final step in a grievance procedure may validly provide that grievance proceedings shall terminate if an employee claiming to be aggrieved by the employer's breach submits the subject matter of the grievance to adjudication in a court of law.

2. LABOR RELATIONS — COLLECTIVE BARGAINING — GRIEVANCE PROCEDURES — ARBITRATION.

Public employers and unions are obliged to meet and negotiate in good faith over mandatory subjects of collective bargaining, including grievance procedures, but they are not obliged to agree to any particular procedures or to resolve disputes; arbitration, while favored in Michigan as a procedure for resolving grievances, is a matter of contract, and a party to a collective-bargaining agreement cannot be required to submit a dispute to arbitration rather than seek judicial resolution unless he has agreed to submit it (MCL 423.215; MSA 17.455[15]).

3. LABOR RELATIONS — GRIEVANCE PROCEDURES — ARBITRATION.

Where arbitration is not the mandatory final step in a grievance procedure under a collective-bargaining agreement, a union member aggrieved by a breach of the agreement may resort to an action at law to obtain satisfaction, although commencement of such an action might not relieve the employer of its

obligation to negotiate resolution of the grievance with the union (MCL 600.1405; MSA 27A.1405).

4. LABOR RELATIONS — COLLECTIVE BARGAINING — GRIEVANCES.

A union can relinquish its collective rights, including its right to negotiate over grievances; where a collective-bargaining agreement provides for the end of negotiation upon a grievance becoming the subject of a lawsuit, the union has no right to continue negotiation.

DISSENTING OPINION BY WILLIAMS, J.

5. LABOR RELATIONS — COLLECTIVE-BARGAINING AGREEMENTS — ARBITRATION — QUESTION OF LAW.

*An employer has no duty to arbitrate issues relative to employment absent an agreement to arbitrate; however, once an employer agrees to arbitrate, the arbitrability of an issue is a question for the court.*

6. LABOR RELATIONS — COLLECTIVE-BARGAINING AGREEMENTS — ARBITRATION — QUESTION OF LAW — POLICY.

*Judicial inquiry regarding the arbitrability of an issue under a collective-bargaining agreement is limited to whether the claim, on its face, is governed by the contract; arbitration should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation which covers the asserted dispute, and doubts should be resolved in favor of arbitrability.*

7. LABOR RELATIONS — COLLECTIVE-BARGAINING AGREEMENTS — ARBITRATION — QUESTION OF LAW — BURDEN OF PROOF.

*A matter not expressly excluded from the arbitration clause of a collective-bargaining agreement, or which the agreement fails to provide the most forceful evidence of a purpose to exclude from arbitration, should go to arbitration; the burden to establish the exclusion expressly and explicitly is on the party who would exclude it.*

8. LABOR RELATIONS — PUBLIC EMPLOYEES — EXCLUSIVE REPRESENTATION — GRIEVANCES.

*The public employment relations act provides that the representative selected by the majority of public employees in a bargaining unit is the exclusive representative of all the individual members of the unit for purposes of collective bargaining, and also that an individual member may present a grievance to his employer and have it adjusted provided that there is an opportunity for the presence of the representative and that the adjustment is not inconsistent with the terms of the collective-*

*bargaining agreement; an adjustment made contrary to the
provision is violative of the statute (MCL 423.210, 423.211;
MSA 17.455[10], 17.455[11]).*

9. LABOR RELATIONS — COLLECTIVE-BARGAINING AGREEMENTS — EX-
    CLUSIVE REPRESENTATION.

*An exclusive bargaining representative of a bargaining unit
under a collective-bargaining agreement has the responsibility
to insure adherence to the terms of the agreement and the
favorable resolution of disputes arising under it for the individ-
ual and collective members.*

10. LABOR RELATIONS — COLLECTIVE-BARGAINING AGREEMENTS — AR-
    BITRATION — PUBLIC EMPLOYEES — GRIEVANCES.

*Arbitration of labor disputes under a collective-bargaining agree-
ment involving public employees is part of the collective-bar-
gaining process prescribed by the public employment relations
act (MCL 423.201 et seq.; MSA 17.455[1] et seq.).*

11. LABOR RELATIONS — COLLECTIVE-BARGAINING AGREEMENTS — EX-
    CLUSIVE REPRESENTATION — UNFAIR LABOR PRACTICES.

*Insistence by an employer during collective bargaining on the
incorporation of a provision in the agreement which would
exclude the exclusive bargaining representative from various
steps of a grievance procedure constitutes an unfair labor
practice.*

12. LABOR RELATIONS — PUBLIC EMPLOYEES — GRIEVANCES — ELEC-
    TION OF REMEDIES — EXCLUSIVE REPRESENTATION.

*A clause in a collective-bargaining agreement involving public
employees which automatically eliminates the exclusive bar-
gaining agent from participation in the settlement of the
grievance by ending the grievance upon an election by an
individual member of the bargaining unit to seek adjustment of
the grievance in a judicial or administrative forum is invalid as
violative of the public employment relations act (MCL 423.211;
MSA 17.455[11]).*

*Varnum, Riddering, Wierengo & Christenson* (by
*Terrance R. Bacon* and *Bruce G. Hudson)* for
plaintiff.

*Rosenbaum & Holland* (by *Timothy G. Holland)*
for defendant.

LEVIN, J. *(to reverse).* The questions presented
are: (i) whether a collective-bargaining agreement
providing for arbitration as the final step in the
grievance procedure may validly provide that the
grievance proceedings terminate if an employee
claiming to be aggrieved by an employer's breach
of the collective-bargaining agreement submits the
subject matter of the grievance to adjudication in
a court of law, and (ii) whether the instant agree-
ment so provides.

We answer both questions in the affirmative.

I

As with any other mandatory subject of collec-
tive bargaining, the employer and the union have
a statutory obligation to meet and bargain in good
faith regarding grievance procedures.[1] The statute
is, however, neutral regarding the means of resolv-
ing a grievance. Thus the parties have no statu-
tory obligation to agree to any particular proce-
dure. While arbitration has come to be the favored
procedure for resolving grievances in federal and
Michigan labor relations,[2] it is—as the dissenting
opinion acknowledges—a matter of contract; there

[1] Under PERA, the parties must meet and negotiate in good faith
over the mandatory subjects of "wages, hours, and other terms and
conditions of employment", see MCL 423.215; MSA 17.455(15), but
they need not reach an agreement on them. See *Detroit Police
Officers Ass'n v Detroit,* 391 Mich 44, 54-55; 214 NW2d 803 (1974).
This Court has construed this mandate to include grievance proce-
dures. See *Pontiac Police Officers Ass'n v Pontiac,* 397 Mich 674, 680-
681, 685; 246 NW2d 831 (1976).

[2] See the *Steelworkers Trilogy, United Steelworkers of America v
Warrior & Gulf Navigation Co,* 363 US 574; 80 S Ct 1347; 4 L Ed 2d
1409 (1960); *United Steelworkers of America v Enterprise Wheel &
Car Corp,* 363 US 593; 80 S Ct 1358; 4 L Ed 2d 1424 (1960); *United
Steelworkers of America v American Mfg Co,* 363 US 564; 80 S Ct
1343; 4 L Ed 2d 1403 (1960); and see *Kaleva-Norman-Dickson School
Dist v Kaleva-Norman-Dickson School Teachers' Ass'n,* 393 Mich 583;
227 NW2d 500 (1975).

is no requirement that grievances be resolved by arbitration:

"Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *United Steelworkers v Warrior & Gulf Navigation Co,* 363 US 574, 582; 80 S Ct 1347; 4 L Ed 2d 1409 (1960).

The preference for arbitration in Michigan and federal labor law is triggered only if the parties agree to arbitrate. That preference does not operate to override the intent of the parties. The law does not require the employer, the union, or the employee members to forego judicial resolution of disputes concerning the meaning of a collective-bargaining agreement. They may choose to submit disputes to an arbitrator in preference to a judge and, if they agree to that, the law enforces their stated or agreed-upon preference. It is by enforcing the agreement of the parties in lieu of adjudication that the law "prefers" arbitration.

If a grievance arises under a collective-bargaining agreement, including a dispute concerning its construction, there is a duty to bargain over the grievance. If the agreement provides a method or procedure for addressing a grievance, it must be observed. If no method or procedure was previously agreed upon, the parties must simply negotiate on the grievance in good faith. If the negotiation is unsuccessful, there may be a work stoppage (in the private sector), or adjudication by a court, or, if the parties agree, some other method of resolution (such as ad hoc arbitration), or they may simply drop the whole matter. The statute compels no particular form of dispute resolution, nor that the parties even agree to resolve the

grievance, only that the parties *negotiate* over the grievance.

While most collective-bargaining agreements provide for arbitration as the final step in an agreed-upon grievance procedure, that is purely a matter of choice by the parties. Some collective-bargaining agreements set forth a procedure for resolving grievances arising in the administration of the contract that does not include arbitration. Others set forth a procedure which does not provide a means of deciding a grievance that the parties cannot resolve by negotiation. Still others provide no procedure at all for resolving grievances.

If a collective-bargaining agreement contains a grievance resolution procedure, the courts generally require exhaustion of that procedure before the initiation of a lawsuit.[3] If the grievance procedure includes arbitration, the courts normally defer to the arbitration decision.[4] However, where arbitration is not the mandatory final step in a grievance procedure, a member of the union aggrieved by the asserted breach of the collective-bargaining agreement may resort to an action at law to obtain satisfaction.[5] Commencement of such an action might not relieve the employer of its obligation to negotiate concerning the grievance with the union.

---

[3] See, *e.g., Pompey v General Motors Corp,* 385 Mich 537, 560-561; 189 NW2d 243 (1971). However, exhaustion is not required if the union breaches its duty of fair representation. *Id. Cf. Vaca v Sipes,* 386 US 171; 87 S Ct 903; 17 L Ed 2d 842 (1966) (same principle under federal labor law).

[4] See *Enterprise Wheel & Car Corp,* fn 2 *supra,* 363 US 596-599.

[5] Since 1937, private employees have enjoyed the statutory right to enforce collectively bargained labor contracts as third-party beneficiaries. See MCL 600.1405; MSA 27A.1405. When PERA gave collective-bargaining rights to public employees in 1965, those employees obtained the same right to sue to enforce labor contracts.

In the instant case, however, the collective-bargaining agreement provides that if an action is commenced the grievance proceedings shall end.

The dissenting opinion would hold that a collective-bargaining agreement cannot validly provide that the obligation of the parties to negotiate regarding a grievance terminates when an employee has made the grievance the subject of a lawsuit.

Even if that is a correct view, and it is not, it would not follow that the grievance is to be decided, if the employer and union cannot agree, by arbitration. If they cannot agree, their only statutory duty is to continue to negotiate—that is the statutory right; there is no statutory right to binding arbitration.

But even the union's right to resolve a grievance by negotiation may be relinquished, and it was relinquished here.

The union can give up its collective rights, including the right to strike and the right to negotiate over grievances.[6] Indeed, that is what it does

---

[6] As exclusive bargaining agent, the union has broad authority under PERA § 15 to negotiate over the mandatory subjects of "wages, hours, and other terms and conditions of employment", including grievances. MCL 423.215; MSA 17.455(15). Section 15 tracks § 8(d) of the NLRA, 29 USC 158(d), and federal precedent is relied upon by Michigan courts in construing it. See, *e.g.*, *DPOA*, fn 1 *supra*, 391 Mich 53.

Federal courts have construed the union's broad § 8(d) authority to bargain to include the right to waive many of the union's fundamental statutory rights.

"[R]ights * * * conferred on employees collectively to foster the processes of bargaining * * * properly may be * * * relinquished by the union as collective-bargaining agent to obtain economic benefits for unit members." *Alexander v Gardner-Denver Co*, 415 US 36, 51; 94 S Ct 1011; 39 L Ed 2d 147 (1974).

See, also, *e.g.*, *Mastro Plastics Corp v NLRB*, 350 US 270; 76 S Ct 349; 100 L Ed 309 (1956) (right to strike); *NLRB v Rockaway News Supply Co, Inc*, 345 US 71; 73 S Ct 519; 97 L Ed 832; 31 ALR2d 511 (1953) (right not to cross another union's picket line).

Section 11 of PERA, at issue here, mirrors the wording of NLRA

when it agrees to arbitrate; it gives up the right to strike over the grievance and the right to continue to bargain over it. And just as it can relinquish its right to further negotiation and proceed to arbitration, or file a court action, or (in the private sector) strike over the grievance, it can relinquish its right to further negotiation when the grievance becomes the subject of litigation. Relinquishment of the union's right to negotiate further upon the commencement of litigation is what occurred here.

Grievance procedures arise solely from the labor agreement. In drafting the agreement, the union and the employer are free to exclude matters from the grievance procedure, to choose who shall adjudicate disputes that arise under the agreement, to designate who may seek its enforcement, and to relinquish whatever interest the union may have in grievance resolution.

The union has no right to continue to negotiate regarding a grievance after the last step of a grievance procedure. In the instant case, the collective-bargaining agreement contemplated that negotiation would end when the grievance was made the subject of a lawsuit.[7] Therefore, the

§ 9(a), 29 USC 159(a). Unions may waive their § 9(a) rights concerning grievance procedures. See *United Steelworkers of America v NLRB*, 536 F2d 550, 552, fn 3 (CA 3, 1976); see also *NLRB v American Nat'l Ins Co*, 343 US 395, 407-408, fn 22; 72 S Ct 824; 96 L Ed 1027 (1952).

We note that while a union may bargain away collective rights, individual rights of employees may not be bargained away. See, *e.g.*, *Alexander, supra* (Title VII right to equal employment opportunities); *NLRB v Magnavox Co*, 415 US 322; 94 S Ct 1099; 39 L Ed 2d 358 (1974) (employee's right to choose bargaining agent); *Barrentine v Arkansas-Best Freight System, Inc*, 450 US 728; 101 S Ct 1437; 67 L Ed 2d 641 (1981) (right to overtime pay under Fair Labor Standards Act); *Employment Security Comm v Vulcan Forging Co*, 375 Mich 374; 134 NW2d 749 (1965) (right to unemployment compensation).

[7] The powers of an Act 312 interest arbitration panel are broad, see, *e.g.*, MCL 423.236-423.237; MSA 17.455(36)-17.455(37), and the statute requires that its provisions be "liberally construed", MCL 423.231; MSA 17.455(31). Interest arbitration is a substitute for collective bargaining; the panel can decide any issues concerning which the

union here has no right to continue to negotiate regarding the subject matter of Mr. Stevens' cross-claim or to arbitrate it.

While it has become customary *to agree* upon grievance arbitration as the final step, that convention has not yet become law.

## II

In excluding topics from arbitration, this Court has required either an express provision or the "most forceful evidence" of exclusion.[8] The provision at issue expressly excludes from arbitration "any matter" taken before a court or administrative forum.[9]

---

parties can collectively bargain subject to the limits imposed by the statute, see, *e.g.*, MCL 423.239; MSA 17.455(39). See *Local 1518, AFSCME v St Clair Comm'rs*, 43 Mich App 342, 344-345; 204 NW2d 369 (1972). Nothing in the statute prohibits an interest arbitration panel from deciding that the union must relinquish any right that the union itself could have relinquished during negotiations.

If the union was dissatisfied with the results of the interest arbitration—with the form of the grievance procedure—its only remedies were to appeal from the decision of the interest arbitration panel, see MCL 423.242; MSA 17.455(42), or to negotiate for a better procedure in the next contract.

[8] See *KND*, fn 2 *supra*, 393 Mich 592-593, fn 12.

[9] The provision applies to "proceedings involving any matter which is or might be alleged as a grievance" that are "instituted in any administrative action before a government board or agency, or in any court". Once proceedings are instituted, that "such administrative or judicial proceedings shall be the sole remedy; and grounds for a grievance under this agreement shall no longer exist".

The union argues that because this provision does not specify those parties who may "institute proceedings", it should be construed to apply only to situations where a union and not an employee institutes proceedings. This construction amounts, however, to creating an ambiguity where none exists. By its terms, the provision does not qualify those "proceedings" which, instituted, will oust the grievance and arbitration procedure. Furthermore, it encompasses "proceedings" brought in "any administrative action before a government board or agency". There are some administrative agencies where a complaint alleging statutory violation by an employer can be made only by an employee. If the union's contention is correct, it would mean that where an employee who alone had standing to appear

before an administrative agency invoked its processes, the provision would be inoperative despite the fact that it purports to apply to proceedings brought in *all* administrative forums. The broad wording of the provision strongly suggests that it was meant to apply to all parties who might lodge a grievance in another forum and not just if the union is the moving party.

Whatever doubts may linger as to the intent and meaning of the provision are dispelled by the records of the Act 312 arbitration. These records show that both parties clearly understood that it was meant to prevent employees, either by themselves or with the aid of the union, from pursuing dual remedies for their grievances.

In the city's brief to the Act 312 arbitration panel, the city made its purpose in requesting the provision clear:

"Employees, *acting either individually or through their union representatives,* should not have multiple bites of the litigation apple." (Emphasis added.)

In opposing inclusion of the provision in the collective agreement by the arbitration panel, counsel for the union made the following comments at the arbitration hearing:

"The first change in the grievance procedure, proposed by the city, tries to control access to the final step of the grievance procedure—the arbitration step—by saying that if an employee goes somewhere else to obtain his remedy, he waives or forfeits his right under the collective-bargaining agreement to proceed to arbitration. That is all well and good. I guess if an employee wants to waive his rights, he can do that. But if the employee waives the union's rights to go to arbitration, that is a form of direct bargaining; not only an unfair labor practice, it is a direct violation of § 11 of PERA.

\* \* \*

"The effect of what the city proposes is to eliminate this union's statutory right to insure that grievances are settled consistently with the terms and provisions of this agreement, and to deprive us of our right to be present when grievances are adjusted. This union would not necessarily have a right to participate as a party before a court or an administrative agency which determines a matter which is or could be the subject matter of a grievance \* \* \*.

\* \* \*

"Further, I am asking you not to include language in the agreement which would purport to deny this union of its right—statutory right to be present at the adjustment of grievances, and to control the adjustment of grievances whether the individual employee thinks he can get a better bargain for himself without the intervention of his exclusive bargaining representative \* \* \*."

At a later point in the bargaining, counsel for the union did not limit himself to general observations about the legality of the provision but went on to construct a hypothetical situation in order to show how it would operate in practice. He said:

"The way this reads, as I understand it, that if the same employee would have filed with the Civil Rights Commission, then we, as the union, cannot make an ascertainment through this collective-bargain-

We hold that this provision does what it in terms states, and that it precluded the union from pursuing the grievance after Mr. Stevens filed a cross-claim in court on the same issue as the grievance.

We reverse the judgment of the Court of Appeals.

FITZGERALD, C.J., and KAVANAGH, COLEMAN, and RYAN, JJ., concurred with LEVIN, J.

WILLIAMS, J.

## INTRODUCTION

The issue presented to the Court in this case is the validity of an election-of-remedies provision

ing agreement as to whether or not there was a grievance in the first instance, or whether or not we can be present to adjust that grievance, as the statute provides."

\* \* \*

"The point is that we, as the union, are attempting to agree that we won't process that complaint, *i.e.,* that grievance."

\* \* \*

"Because, what happens if Joe, the police officer here, files a discrimination complaint with the Michigan Civil Rights Commission, then that party is Joe, you [the city] and the commission. *It leaves us completely out, even though we have contractual language which we should enforce. We can't enforce it because we are agreeing not to file a grievance. Yes, it does cut us out."*

The record of the parties' Act 312 arbitration is unequivocal. Both parties fully appreciated the significance of the provision. The city's brief to the arbitration panel shows that its purpose in urging the provision's adoption was to prevent not only the union but individual employees from acquiring "multiple bites of the litigation apple". In its argument against the provision's adoption, the union evidenced a detailed understanding of how it would operate. Nor was the union's position in front of the arbitration panel that the provision was vague and should be construed to make it subject to union control. In fact, the union's position was exactly to the contrary. It strenuously maintained that since the wording of the provision gave an employee the choice whether or not to utilize the contractual grievance and arbitration procedure, the provision violated § 11 of PERA. For reasons set forth in the body of this opinion, it does not.

included in a collective-bargaining agreement which provides that once a matter is raised in another forum the grounds for a grievance through the collective-bargaining agreement no longer exist. In essence, the provision allows the individual to proceed with his grievance in whatever forum he chooses and totally abrogates the union's role in the grievance process. We hold that such a clause is invalid, as it violates the principle of exclusive representation and fails to adequately recognize the union's role in the grievance procedure.

FACTS

Ronnie F. Stevens, a member of the defendant union, was sued in federal court in April, 1978, as a result of a shooting that occurred while Stevens was a police officer. Stevens notified the city attorney of the proceedings, as it was his belief that the collective-bargaining agreement[1] between the City of Grand Rapids and Grand Rapids Lodge 97, Fraternal Order of Police (hereinafter the union) provided that the city would assume the costs of his defense and judgment against him, if any. The city refused to provide counsel or to indemnify him. In May, 1978, the union filed a grievance alleging a violation of the collective-bargaining agreement based on the city's refusal to assume these contractual obligations.

Subsequently, Stevens filed a cross-claim against the city on June 9, 1978, in the pending federal

[1] The collective-bargaining agreement at issue in this case is one agreed to pursuant to the public employment relations act (PERA). MCL 423.201 et seq.; MSA 17.455(1) et seq. The particular provision to be interpreted in this case is one of several that were the subject of compulsory Act 312 arbitration. MCL 423.231 et seq.; MSA 17.455(31) et seq.

suit which asserted the same issues raised in the grievance filed by the union. On June 19, 1978, the union filed a demand for arbitration on the grievance. It was received the next day by the American Arbitration Association, and on this same day the city filed an answer to the cross-claim in federal court.

The city thereafter initiated this action to restrain arbitration on the grievance since it was also the subject of a federal court proceeding. A temporary injunction order against arbitration was issued by the Kent Circuit Court, because it found that Article VIII, § 3b[2] of the collective-bargaining agreement expressly excluded this claim from the arbitration process.

A petition for reconsideration was denied following a hearing by the circuit court. Defaults were entered against the American Arbitration Association and Stevens.

The union obtained leave to appeal in the Court of Appeals, and, on March 17, 1980, the Court of Appeals, by a vote of 2 to 1, reversed the circuit court and set aside the injunction. *Grand Rapids v Grand Rapids Lodge No 97, Fraternal Order of Police*, 96 Mich App 226; 292 NW2d 529 (1980). The Court of Appeals found that there was "no forceful evidence of an intent to terminate FOP's [the union's] right to arbitration where the individ-

[2] Article VIII, § 3b, of the collective-bargaining agreement provides as follows:

"b. If proceedings involving any matter which is or might be alleged as a grievance are instituted in any administrative action before a government board or agency, or in any court, then such administrative or judicial proceedings shall be the sole remedy; and grounds for a grievance under this agreement shall no longer exist. Injunctions, temporary restraining orders, or action under veteran's preference shall not be considered part of the grievance procedure."

ual grievant has made an election of remedies",
and that the union's control over the grievance
procedure could not be made "contingent on the
pursuit or outcome of an employee's personal rem-
edies". 96 Mich App 230. The dissent agreed with
the circuit court that § 3b was an express exclu-
sion and applied in this case. *Id.,* 231. The Court of
Appeals denied plaintiff's application for rehearing
and motion for restoration of the injunction.

On October 10, 1980, we granted leave to appeal
and stayed arbitration pending disposition of the
appeal. 409 Mich 924 (1980).

## I. ARBITRATION AGREEMENTS IN GENERAL

There are several settled principles of labor law
that are applicable to this case. It is well-settled
that the question of arbitrability is one for the
court. *John Wiley & Sons, Inc v Livingston,* 376
US 543, 546-547; 84 S Ct 909; 11 L Ed 2d 898
(1964). As stated in *Wiley,* the duty to arbitrate is
one of a contractual origin and thus, in general, an
employer has no obligation to arbitrate issues
which he has not agreed to arbitrate.[3]

On the other hand, there is a strong policy on
the federal and state level of favoring the arbitra-
tion of disputes. In the *Steelworkers Trilogy,*[4]

---

[3] There is a distinction drawn between "grievance" arbitration and
"interest" arbitration. A grievance dispute is one arising under an
existing contract, while an interest dispute is one arising during
collective-bargaining negotiations over the terms to be included in a
new contract. The compulsory arbitration pursuant to Act 312 which
is applicable to police is characterized as "interest" arbitration.

[4] *United Steelworkers of America v Warrior & Gulf Navigation Co,*
363 US 574; 80 S Ct 1347; 4 L Ed 2d 1409 (1960); *United Steelworkers
of America v Enterprise Wheel & Car Corp,* 363 US 593; 80 S Ct 1358;
4 L Ed 2d 1424 (1960); *United Steelworkers of America v American
Manufacturing Co,* 363 US 564; 80 S Ct 1343; 4 L Ed 2d 1403 (1960).

several basic propositions were enunciated concerning arbitration. First, judicial inquiry is limited to whether a claim on its face is governed by the contract. Second, arbitration should not be denied unless "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers of America v Warrior & Gulf Navigation Co,* 363 US 574, 582-583; 80 S Ct 1347; 4 L Ed 2d 1409 (1960). Third, absent an express provision excluding a particular grievance from arbitration or the most forceful evidence of a purpose to exclude the claim from arbitration, the matter should go to arbitration. Fourth, the burden is on the party who would exclude a matter from the general arbitration clause to do so expressly and explicitly. All of these principles are especially relevant to the case at hand.

This Court adopted these principles and applied them in a public employment relations act (PERA) context in *Kaleva-Norman-Dickson School Dist v KND Teachers' Ass'n,* 393 Mich 583; 227 NW2d 500 (1975) (hereinafter *KND School Dist*). In *KND School Dist,* there was a dispute over the renewal of a probationary teacher's contract and the amount of discretion given to the school board in such a matter pursuant to the collective-bargaining agreement. This Court held that there was no express reservation of such claims from arbitration in the contract or any evidence of a purpose to exclude such claims from arbitration. Therefore, whether or not there was a violation of the contract was held to be a question for the arbitrator. This Court could not say with positive assurance that the arbitration clause was *not* susceptible of an interpretation to cover the dispute. The Court

of Appeals was reversed, and the injunction restraining arbitration of the claim was dissolved.

## II

In this case, there is a dispute over the applicability and validity of an election-of-remedy clause contained in the collective-bargaining agreement. Article VIII, § 3b, of the collective-bargaining agreement provides as follows:

"If proceedings involving any matter which is or might be alleged as a grievance are instituted in any administrative action before a government board or agency, or in any court, then such administrative or judicial proceedings shall be the sole remedy; and grounds for grievance under this agreement shall no longer exist. Injunctions, temporary restraining orders, or action under veteran's preference shall not be considered part of the grievance procedure."

This provision was the subject of compulsory arbitration pursuant to Act 312, 1969 PA 312; MCL 423.231 *et seq.;* MSA 17.455(31) *et seq.* The transcript of the Act 312 arbitration contains extensive commentary on this particular provision.[5] Our task

---

[5] This provision was the subject of much debate during the Act 312 compulsory arbitration proceedings. The union argued extensively that the provision was unlawful in that it deprived the union of its exclusive representative rights. The union conceded that it would have no problem with the individual electing a forum and waiving his rights but to allow an individual to elect and waive the union's rights presented another issue.

"I guess if an employee wants to waive his rights, he can do that. But if the employee waives the union's rights to go to arbitration, that is a form of direct bargaining; not only an unfair labor practice, it is a direct violation of section 11 of PERA." Act 312 Arbitration Transcript, p 104.

The city, on the other hand, argued that the provision had been in previous contracts and therefore should remain a part of the collective-bargaining agreement. The city continued and stated:

"I might say, what we are really talking about here, is not to foreclose anybody from asserting a claim. We agree that the person or

is to decide whether or not § 3b of the collective-bargaining agreement deprives the union of the opportunity to proceed with the grievance and arbitration process when an individual has filed a cross-claim in a federal suit involving the same subject matter.

A fundamental principle of labor law that is essential to our decision in this case is that of exclusive representation. As the exclusive bargaining representative, the union has an inherent interest in an individual's grievance. Not only is the union required to see that the individual member is treated fairly, it must insure the protection of the collective membership. The union has the responsibility to see that the collective-bargaining agreement is adhered to and that any disputes arising thereunder are resolved favorably. As the United States Supreme Court has stated: "[i]n establishing a regime of majority rule, Congress sought to secure to all members of the unit the benefits of their collective strength and bargaining power, in full awareness that the superior strength of some individuals or groups might be subordinated to the interest of the majority". *Emporium Capwell Co v Western Addition Community Organization,* 420 US 50, 62; 95 S Ct 977; 43 L Ed 2d 12 (1975). To allow an individual to oust the union in a particular grievance through a clause such as § 3b defeats this objective.[6]

organization that is adversely affected ought to have the right to file a claim, whatever type they want to do, and assert their rights and get a decision.

"What we are simply saying is that, when you do that, that you then consciously decide how you are going to go and if you have two choices or three choices, you ought to sit down and decide in advance whether you are going to go to the grievance procedure, to the Civil Service Board, or to some other organization." Act 312 Arbitration Transcript, pp 123-124.

[6] In *Lowe v Hotel & Restaurant Workers Union, Local 705,* 389 Mich 123; 205 NW2d 167 (1973), this Court recognized the role of the

Section 11 of PERA[7] provides that the representative selected by the majority of public employees in a unit shall be the exclusive representative. There are two provisos in § 11 that state:

"Provided, That any individual employee at any time may present grievances to his employer and have the grievances adjusted, without intervention of the bargaining representative, if the adjustment is not inconsistent with the terms of a collective bargaining contract or agreement then in effect, provided that the bargaining representative has been given opportunity to be present at such adjustment." MCL 423.211; MSA 17.455(11).

The language of this provision is derived from § 9(a) of the National Labor Relations Act (NLRA). 29 USC 159(a). In construing provisions of PERA and contracts relative thereto, it is appropriate to look to the federal cases interpreting the federal labor laws, especially in a case such as the one at hand where the statutory language is the same as that of the federal act. *KND School Dist, supra,* 393 Mich 590-591. See *Michigan Employment Relations Comm v Reeths-Puffer School Dist,* 391 Mich 253, 260; 215 NW2d 672 (1974). The proviso was intended to allow for direct settlement of grievances between employer and employee but at the same time to assure the participation of the union to protect other members and the collective-bargaining agreement itself. Absent this proviso, it would be in violation of PERA and the exclusive representation principle for the employer to deal

___

union in protecting individual members as well as the collective whole. "The union must be concerned for the common good of the entire membership. This is its first duty." *Id.,* 145. "When the general good conflicts with the needs or desires of an individual member, the discretion of the union to choose the former is paramount." *Id.,* 146.

[7] MCL 423.211; MSA 17.455(11).

directly with the employee. A distinction is drawn in § 11 between "collective bargaining" and "grievances". The distinction, however, is not always clear. In fact, under the language of the NLRA the arbitration of grievances has been held to be part of the collective-bargaining process. *McGuire v Humble Oil & Refining Co,* 355 F2d 352, 358 (CA 2, 1966), *cert den* 384 US 988; 86 S Ct 1889; 16 L Ed 2d 1004 (1966). The Supreme Court of the United States has even stated that "arbitration of labor disputes under collective bargaining agreements is part and parcel of the collective bargaining process itself". *United Steelworkers of America v Warrior & Gulf Navigation Co,* 363 US 574, 578; 80 S Ct 1347; 4 L Ed 2d 1409 (1960). Since PERA contains language similar to that of the NLRA, the arbitration process here is also a part of collective bargaining.

The proviso in § 11 applicable to grievances requires that the bargaining representative be given an opportunity to be present at the grievance-adjustment meeting. To adjust a grievance without allowing the union this opportunity is a violation of § 8(a)(5) of the NLRA, 29 USC 158(a)(5), *Valencia Baxt Express, Inc,* 143 NLRB 211 (1963), and similarly under Michigan law, a violation of § 10 of PERA. See *Mellon v Fitzgerald Public Schools,* 22 Mich App 218; 177 NW2d 187 (1970).

Several federal decisions emphasize this important role of the union representative. In *Bethlehem Steel Co,* 89 NLRB 341, 343 (1950), *enforcement den on other grounds, Bethlehem Steel Co v NLRB,* 89 US App DC 122; 191 F2d 340 (1951), the NLRB held that it was an unfair labor practice for an employer to insist on the incorporation of a provision which would exclude union representa-

tives from various steps of the grievance procedure. "Grievances are usually more than mere personal dissatisfactions or complaints of employees and their adjustment frequently involves the interpretation and application of the terms of a contract or otherwise affects the terms and conditions of employment not covered by a contract." 89 NLRB 344.

In *Industrial Union of Marine & Shipbuilding Workers of America, AFL-CIO v NLRB,* 320 F2d 615, 619 (CA 3, 1963), *cert den sub nom Bethlehem Steel Co v NLRB,* 375 US 984; 84 S Ct 516; 11 L Ed 2d 472 (1963), the grievance proviso was interpreted not only to require that the union be given the opportunity to be present but also to prevent the employer from insisting on employee-signed grievances.

### III

Applying these principles and precedents to the collective-bargaining agreement at issue in this case leads us to conclude that the election-of-remedies clause is invalid. First of all, it offends the principle of exclusivity of representation. Section 11 of PERA provides that the representative selected by the majority shall be the exclusive representative. Section 3b of the agreement, however, denies the union this right, as it prevents the union from being able to represent its members in a grievance procedure when an individual member elects another forum.

Secondly, while § 11 of PERA recognizes the right of an individual to attempt grievance adjustment with the employer without the intervention of the union representative, it also qualifies this right. The adjustment must not be inconsistent

with the terms of the collective-bargaining agreement, and the representative must be given an opportunity to be present at the adjustment meeting. These safeguards are not found in the § 3b election-of-remedies clause.[8] This clause presents the very real possibility that an individual's grievance adjustment through another forum would be inconsistent with the collective-bargaining agreement and, thus, undermine it. As the Supreme Court stated in *Republic Steel Corp v Maddox,* 379 US 650, 653; 85 S Ct 614; 13 L Ed 2d 580 (1965):

> "Union interest in prosecuting employee grievances is clear. Such activity complements the union's status as exclusive bargaining representative by permitting it to participate actively in the continuing administration of the contract."

It is quite an anomaly that the union is the only one that can demand arbitration, yet the individual can elect another forum and totally defeat the union's right to arbitrate in a particular dispute.[9] This violates fundamental labor principles.

Plaintiff's main argument in this case is that parties to a collective-bargaining agreement can agree to exclude a matter from the arbitration process and that the parties so agreed in this case. The city relies mainly on *KND School Dist, supra.*

While it is true as a general proposition that the parties can agree to exclude certain matters from the arbitration procedure, we hold that in this case the attempted exclusionary clause is invalid for the reasons discussed. In order for there to be a valid exclusionary clause there must be assurances

---

[8] We express no opinion as to the validity of an election-of-remedy clause that is drafted in language differing from the one with which we are presented in this case.

[9] Under the collective-bargaining agreement, Article VIII, only the lodge may demand arbitration.

that the resolution without arbitration will not harm the other members' rights or the collective-bargaining agreement. Otherwise, the fact that the union is the exclusive representative and guardian of the agreement would be meaningless.

In light of the above discussion, it is clear that the Court of Appeals in this case reached the correct result.[10] Some of the language in its opinion, however, needs clarification. The general principle enunciated in *Steelworkers Trilogy* and adopted in *KND School Dist* states that arbitration will not be required if a matter is expressly excluded *or* where there is forceful evidence of a purpose to exclude it from arbitration. The Court of Appeals never mentioned the express exclusion possibility, but only stated that there was "no forceful evidence of an intent to terminate FOP's right to arbitration where the individual grievant has made an election of remedies". *Grand Rapids v Grand Rapids Lodge No 97, Fraternal Order of Police,* 96 Mich App 226, 230; 292 NW2d 529 (1980). We still follow the two-prong approach of *KND School Dist* in interpreting whether or not a matter has been excluded from the arbitration clause, but find that in any event the express exclusionary clause in this case is invalid as contrary to PERA. An individual's election cannot deprive the union or its membership of its statutory rights.

Plaintiff also relies on the fact that this particular election-of-remedies clause was agreed to by the union and that in the Act 312 arbitration proceeding defendant expressly understood the implications of such a clause. The fact that the clause was finally included in the collective-bargaining agreement does not preclude the union

---

[10] See Bunn, *Labor Law,* 27 Wayne L Rev 849, 873-874 (1981).

from challenging its validity. In fact, the parties, in the course of the arbitration proceeding, discussed the legal implications that such a clause may involve. The city persuaded the arbitrator to include the clause and leave the validity of such a clause for the courts to decide at a later date. Act 312 Arbitration Transcript, pp 124-125.

Plaintiff also argues that to allow the individual to proceed under both arbitration and judicial procedures would allow him "two bites at the litigation apple". It is especially true in this litigious society that duplication of proceedings should be avoided. This objective, however, should not be obtained at the expense of union and individual rights.[11] In *City of Grand Rapids,* 1975 MERC Lab Op 102, the Employment Relations Commission addressed this issue where the grievance procedures pursuant to the civil service rules and the collective-bargaining agreement were identical. The commission recognized the paramount rights of the union in the adjustment of grievances. "The right of the union to pursue the grievance is an organizational right to have the grievance processed according to the organization's collection bargaining agreement with the city." *Id.,*

[11] In *Barrentine v Arkansas-Best Freight System,* 450 US 728, 745-746; 101 S Ct 1437; 67 L Ed 2d 641 (1981), the Supreme Court held that an employee may bring an action in federal district court, alleging a violation of the Fair Labor Standards Act even though he had already unsuccessfully pursued the same dispute through the collective-bargaining procedure. In its conclusion, the court cited *Alexander v Gardner-Denver Co,* 415 US 36, 49-50; 94 S Ct 1011; 39 L Ed 2d 147 (1974), which stated:

"In submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective-bargaining agreement. By contrast, in filing a lawsuit under [the statute], an employee asserts independent statutory rights accorded by Congress. The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence. And certainly no inconsistency results from permitting both rights to be enforced in their respectively appropriate forums."

108. It also stated that "[i]t might well be, as urged by the city, that Muste is seeking to have a 'second bite at the apple'; however, the second bite is by the labor organization". *Id.,* 109. The commission unanimously held that the city's refusal to provide the grievance hearing was an unfair labor practice.

The grievance proviso in § 11 of PERA also raises the possibility of duplicative proceedings. This is considered a necessary evil, however, to assure the union's right to preserve the collective-bargaining agreement. The Court of Appeals in *Mellon v Fitzgerald Public Schools,* 22 Mich App 218, 221-222; 177 NW2d 187 (1970), recognized this possibility when it stated:

> "However, since the proviso requires an individual adjustment to be consistent with the collective-bargaining agreement, the employer may elect to proceed *under* the agreement's procedures in the first place rather than risk rebargaining over the same issues."

Clearly, if the resolution of the grievance was such that it was inconsistent with or in violation of the collective-bargaining agreement, the union would have the right and duty to rectify the matter. In such a case, there would necessarily be a duplication of proceedings.

The approach we have taken in this opinion does not in any way diminish the rights of the individual. We only hold that a clause which provides that the union is automatically eliminated from any participation in the grievance settlement process[12] when an individual resorts to

---

[12] It has been suggested that the union has no complaint as it can intervene in the federal suit and thereby protect its interest. This solution, however, begs the question. The issue is whether an individual's election of a forum after the filing of a grievance should be able to divest the union of its rights under the collective-bargaining

a judicial forum after a grievance has been filed is invalid. In this case, the individual grievant approached the union to proceed with his grievance.[13] Once this action is taken, the union should not be deprived of its right to assure the satisfactory adjustment of the grievance in accordance with the collective-bargaining agreement.

It should also be noted that there is a distinction between an individual election-of-remedies clause and one such as § 3b in this case. In a sense, the individual did elect to proceed with the grievance through the collective-bargaining route and, therefore, we see no problem with requiring the individual to carry through with this choice. At that point, any action taken by the individual in another forum should not be able to deprive the union of its right to proceed as the exclusive representative of its members. It is one thing to say that an individual must choose which forum he wishes to proceed in, and another to say that the individual's choice of forum necessarily deprives the union of its important role.

The issue involved in this case is clearly an arbitrable one, and, therefore, the parties are required to submit this matter to arbitration.[14] While

---

agreement, not whether the union has alternative remedies. We hold that the individual election cannot be held to take away the union's rights.

[13] In oral argument, it was stated that Stevens approached the union when the city refused to indemnify or provide counsel for him in the federal proceeding. The sequence of events was 1) the filing of the grievance by the union and then 2) the filing of the cross-claim involving the same issue in the federal suit. Brief of defendant-appellee, p 3. The complaint at ¶ 13 also states that Stevens had given the union authority to act for him and had adopted the signature of Fred LaMaire, president of Lodge 97, as his own. Complaint of plaintiff, p 3.

[14] In *Detroit Fire Fighters Ass'n v Detroit*, 408 Mich 663; 293 NW2d 278 (1980), this Court held that the Legislature did not intend to authorize MERC to defer to private arbitration public sector statutory grievance disputes that are also arguably covered by the collective-

the individual may argue that he is being denied the right to proceed with his claim in the forum of his choice, that is not the case here. The individual grievant approached the union and allowed the union to go forward with his claim and, therefore, the harm to the individual is minimal.[15] The interests of all are best served by requiring arbitration pursuant to the collective-bargaining agreement to go forward.

bargaining agreement. In rejecting the *Collyer*-type deferral doctrine that has been upheld under the NLRA, the majority found several aspects of PERA significantly different from the NLRA to justify a different conclusion, namely 1) the prohibition of strikes, MCL 423.202; MSA 17.455(2), 2) that procedures must be conducted pursuant to the Michigan Administrative Procedures Act, MCL 423.216(a); MSA 17.455(16)(a), and 3) that PERA requires MERC to make findings of fact and the decisions are reviewable by the Court of Appeals as a matter of right. MCL 423.216, subds (d), (e); MSA 17.455(16), subds (d), (e). In the course of the *Detroit Fire Fighters* case, however, the Court emphasized that

"we find *no legislative intent forbidding or discouraging voluntary private arbitration of public employee grievance disputes.* Rather, we read PERA and related state statutes as manifesting a clear legislative intent that, once a party to a public sector employment collective bargaining relationship invokes MERC's jurisdiction under PERA, that party's complaint should be resolved by MERC in accordance with the statutory processes." 408 Mich 685 (emphasis added).

In the instant case, MERC's jurisdiction was not invoked. Therefore, we are not dealing with arbitration proceedings involving a statutory unfair labor practice charge as well as a contractual grievance charge. Here the issue is whether arbitration should be allowed to proceed when a cross-claim is filed in a court proceeding and there is an election-of-remedies provision in the collective-bargaining agreement. We believe that in such a case the voluntary arbitration proceedings should be encouraged. There is a preference in this state for the voluntary resolution of contractual labor disputes through mutually binding collective-bargaining agreement procedures. See *KND, supra; Detroit Fire Fighters, supra* (opinion by WILLIAMS, J.), 408 Mich 721-723. Thus, our decision in this case is in accord with this preference.

[15] The facts of this case do not require us to decide what the result would be if the order in which action was taken was different or if the union had acted on its own. Also, since there is a grievance procedure provided for in the collective-bargaining agreement, we need not decide the hypothetical issues raised at oral argument on the premise that no grievance procedure was available.

## CONCLUSION

We hold that the election-of-remedies clause in this case, § 3b of the collective-bargaining agreement, is invalid and, thus, cannot preclude the union from seeking arbitration on the subject matter at issue. To decide otherwise would undermine the exclusivity of representation principle and the safeguards provided by PERA. The strong policy of this state in favor of arbitration of disputes is also furthered by our decision.

The decision of the Court of Appeals is affirmed and the stay of arbitration proceedings is dissolved.

No costs, a public question.

RILEY, J., took no part in the decision of this case.