PICK v SZYMCZAK

Docket No. 98142. Argued November 8, 1995 (Calendar No. 7). Decided
      June 5, 1996.

John O. and Sally Pick brought an action in the Gratiot Circuit Court
      against Jan A. Szymczak and the Gratiot County Road Commission,
      for injuries caused when their automobile collided with a vehicle
      driven by Szymczak at an intersection under the jurisdiction of the
      commission. They alleged that the commission breached its duty to
      provide traffic control devices or warning signs. The court, Timothy
      M. Green, J., granted summary disposition for the defendant, citing
      *Scheurman v Dep't of Transportation* and *Prokop v Wayne Co Bd
      of Rd Comm'rs*, 434 Mich 619 (1990), ruling as a matter of law that
      the defendant had no duty of maintenance outside the roadway
      proper. The Court of Appeals, WAHLS, P.J., and CAVANAGH, J.
      (SHEPHERD, J., dissenting), affirmed (Docket No. 137719). The plain-
      tiffs appeal.

      In an opinion by Justice CAVANAGH, joined by Chief Justice
      BRICKLEY, and Justices LEVIN and MALLETT, the Supreme Court *held*:

      A duty is imposed on governmental agencies to provide traffic
      control devices or warning signs at, or in regard to, points of haz-
      ard affecting vehicular travel on roadways within their jurisdiction.
      Whether a duty arises is strictly subject to the notice requirement
      of MCL 691.1403; MSA 3.996(103).

      1. A duty to provide adequate warning signs or traffic control
      devices at known points of hazard arises under the highway excep-
      tion of the governmental tort liability act, MCL 691.1402; MSA
      3.996(102). The highway exception establishes the duty to maintain
      the highway in reasonable repair so that it is reasonably safe for
      public travel. The duty of maintenance includes the duty to erect
      adequate warning signs or traffic control devices at a point of haz-
      ard or special danger. Therefore, if the alleged impediments to safe
      vehicular travel cited by the plaintiffs are points of hazard, the
      defendant has a duty to warn motorists or to otherwise act so as to
      render travel on the improved portion of the roadway reasonably
      safe.

      2. Vehicular travel does not take place solely on the two-dimen-
      sional length and width of the roadway; rather, it occurs in three-

dimensional space and necessarily implicates factors not physically within the improved portion of the roadway itself, factors that can be points of hazard to reasonably safe vehicular travel on the interconnected network of public roadways. A point of hazard or special danger is any condition that directly affects vehicular travel on the improved portion of the roadway so that such travel is not reasonably safe. The condition must be one that uniquely affects vehicular travel on the improved portion of the roadway, as opposed to a condition that generally affects the roadway and its surrounding environment. Such conditions need not be physically part of the roadbed itself.

Reversed and remanded.

Justice BOYLE, concurring in part and dissenting in part, stated that the claims regarding failure to install signals or warnings do not allege breach of a duty to warn of the existence of a point of special hazard to a motorist operating with due care on the improved portion of the highway. The duty imposed is to maintain the highway either by repairing it or warning motorists using it of a dangerous condition of the roadway itself.

The government is not obligated to erect a warning at an uncontrolled intersection on secondary gravel roads because the intersection is not a point of special hazard, nor does a limited ability to make observations on one side of the road caused by trees or vegetation make it so. The dangers presented by such an intersection do not arise from the condition of the roadway itself. A claim of failure to erect signs at an open intersection and a claim that vision was obstructed at such an intersection by vegetation on private property do not, as a matter of law, constitute an allegation of a breach of the government's duty to warn plaintiffs of a point of hazard originating on the roadway.

In this case, the openness of the intersection and the vegetation did not constitute a hazardous condition of the roadway surface as a result of improper maintenance of the roadway surface itself. A sign might make the intersection safer, but the government is not the insurer of highway safety.

Justice RILEY, joined by Justice WEAVER, dissenting, stated that consistent with *Scheurman*, the highway exception to the governmental immunity statute does not expose the state or a county to liability for alleged defects that arise outside the improved portion of the highway designed for vehicular travel.

The exception creates a duty to erect signs or proper control devices at points of hazard only when these hazards arise from the failure of the state or a county to maintain the improved portion of the highway designed for vehicular travel in reasonable repair, i.e.,

failure to fulfill its statutory duty. In specifying the improved portion of the highway, the Legislature must have contemplated the maintenance of the integrity of the roadbed's surface. The majority improperly enlarges the duty from one of repair and maintenance to one of keeping the traveled portion of the roadway reasonably safe.

The statute is unambiguous in creating a governmental duty to repair and maintain only the improved portion of the highway designed for vehicular travel. This conclusion is faithful to the plain meaning of the provision defining the scope of the duty of the state and counties. Consequently, the state or a county road commission would be liable only when its failure to repair or maintain the improved portion of the highway, i.e., the physical structure of the road surface, causes an injury. There is no obligation to warn motorists about dangers that do not arise from the condition of the roadbed itself. In this case, the defendant is protected from liability as a matter of law because the plaintiffs' claims about the alleged dangers were unrelated to the roadbed itself.

203 Mich App 138; 511 NW2d 694 (1993) reversed.

*Oade, Stroud & Kleiman, P.C.* (by *Ted W. Stroud*), for the plaintiffs.

*Fordney, Dust & Prine* (by *Andrew W. Prine, P.C.*), for defendant Gratiot County Road Commission.

Amici Curiae:

*Law Offices of Wayne J. Miller, P.C.* (by *Anne K. Flaherty* and *Wayne J. Miller*), for the Michigan Head Injury Alliance.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Brenda E. Turner*, Assistant Attorney General, for the Michigan Department of Transportation.

*Highland & Zanetti, P.C.* (by *John N. Highland*), for the Michigan County Road Commission Self-Insurance Pool.

CAVANAGH, J. This case requires us to revisit the still-unsettled issue of the highway exception to governmental immunity, MCL 691.1402; MSA 3.996(102). Presented for our review in this appeal is the plaintiffs' claim that defendant Gratiot County Road Commission breached its duty to provide traffic control devices and warning signs, "that *Scheurman* [*v Dep't of Transportation* and] *Prokop* [*v Wayne Co Bd of Rd Comm'rs*, 434 Mich 619; 456 NW2d 66 (1990)] are dispositive that the road commission had a duty to . . . repair and maintain the improved traveled portion of the roadway, but did not have to go outside the roadway proper." The trial court granted summary disposition for the defendant road commission. We conclude that the trial court erred as a matter of law, and remand for a summary disposition hearing pursuant to MCR 2.116(C)(10).

I

On September 5, 1988, John Pick was driving his car eastbound on Roosevelt Road in Gratiot County. At the crossroads intersection of Roosevelt and Crapo Roads,[1] Pick's automobile collided with a vehicle being driven by defendant Jan Szymczak.[2]

A

Plaintiffs' complaint made the following allegations relevant to this appeal:

---

[1] It is undisputed that the intersection was under the jurisdiction of defendant Gratiot County Road Commission and that it was not controlled by any traffic devices or warning signs.

[2] Defendant Szymczak is no longer a party to this appeal. This case deals solely with plaintiffs' claim against Gratiot County Road Commission. Both drivers were injured. Sally Pick's sole claim in this case is a derivative claim for loss of consortium.

21. That pursuant to MCLA 691.1401, *et seq.*; MSA 3.996(101) [*et seq.*][3] . . ., the defendant, Road Commission, is charged with the statutory duties to design, maintain and repair all roadways within its jurisdiction, including Roosevelt Road, Crapo Road, and their intersection, so they are reasonably safe and fit for public travel.

22. That included within the above-described duties was a duty owed by the defendant, Road Commission, to post signs and other traffic control devices and warnings at or before the aforesaid intersection to assure that same was reasonably safe and fit for public travel.

23. That one of the proximate causes of the collision previously described above, and the resulting injuries and damages sustained by the plaintiffs, was the failure of the defendant, Road Commission, to fulfill their aforementioned duties so that the said roadways and intersection were reasonably safe and fit for public travel, and the said defendant's breaches were in the following particulars:

A. Failing to properly design the aforesaid intersection and roadways to be safe for vehicular traffic.

B. Failing to properly maintain the aforesaid intersection and roadways to be safe for vehicular traffic.

C. Failing to install and provide reasonably necessary traffic control devices at or near the intersection of Roosevelt Road and Crapo Road in Gratiot County, Michigan.

D. Failing to install and provide stop or yield signs at or near the aforesaid intersection.

E. Failing to install and provide warning signs or notices on Roosevelt Road and Crapo Road informing motorists of the approaching crossroad and intersection.

---

[3] The complaint also cites the statutory duty imposed on "the counties to keep in reasonable repair, so that they shall be reasonably safe and convenient for public travel, all county roads, bridges and culverts that are within their jurisdiction and under their care and control and which are open to public travel." MCL 224.21; MSA 9.121. However, this statutory provision has not been the subject of any discussion or briefing in the trial court, the Court of Appeals, or this Court. This appeal is based solely on the duty that arises under the highway exception to governmental immunity.

F. Failing to install and provide signs or devices to assure
that the aforesaid intersection and roadways were safe for
vehicular traffic.

Defendant filed a motion for summary disposition
pursuant to MCR 2.116(C)(7), (8) and (10). In its
brief in support of that motion, defendant argued:

[T]here is no claim in this matter that any condition
existing within the "traveled portion of the roadbed actually
designed for vehicular travel" caused either vehicle to go
out of control, or leave the roadway . . . .

Rather, it is the contention of both Plaintiffs . . . that
the accident occurred as a result of an alleged "vision
obstruction" in the form of an orchard, which was admit-
tedly located on private property, and outside the
"improved portion of the roadway designed for vehicular
travel."

After oral argument at the motion hearing, the cir-
cuit judge stated that "the issue before the Court is
what were the duties of the road commission . . . ."
Noting that questions of duty are questions of law,
the circuit court held "that *Scheurman* [and] *Prokop*
are dispositive that the road commission had a duty
to . . . repair and maintain the improved traveled
portion of the roadway, but did not have to go
outside the roadway proper." Accordingly, the court
granted defendant's motion for summary disposition.[4]

The circuit court did not specify which subsection
of the court rule it relied on in granting defendant's
motion for summary disposition in either its bench
ruling or its written order. The Court of Appeals
noted that the circuit court based its grant of sum-

---

[4] This bench ruling subsequently was issued as a written order on Janu-
ary 24, 1991.

mary disposition on its holding that defendant "had
no duty to maintain areas outside the improved por-
tion of the roadway" and, accordingly, reviewed it as
a grant under MCR 2.116(C)(8). 203 Mich App 138,
139; 511 NW2d 694 (1993). We agree, and will review
the Court of Appeals decision under the same
standard.

B

The Court of Appeals panel cited *Scheurman,*
*supra,* for the proposition that "the duty [that arises
under the highway exception] is narrowly drawn, and
extends only to the improved, traveled portion of the
roadway of a highway that was designed for vehicular
travel; it does not include . . . any other installation
outside the improved portion of the highway designed
for vehicular travel." 203 Mich App 140 (citations
omitted). The Court of Appeals majority then held as
follows:

> In this case, it is very clear that the orchards on private
> property adjacent to the road cannot be classified as being
> part of the improved portion of the highway designed for
> vehicular travel. Consequently, the existence of the
> orchards and their influence as a visual obstruction of the
> intersection creates no duty on the part of the defendant
> under the highway exception to governmental immunity.
>
> What is not so clear is whether the improved portion of
> the highway includes improvements that serve as integral
> parts of the highway, such as signs and shoulders. See
> *Scheurman, supra* at 637, n 29; *Salvati v State Hwy Dep't,*
> 415 Mich 708; 330 NW2d 64 (1982); *Hutchinson v Allegan*
> *Co Bd of Rd Comm'rs (On Remand),* 192 Mich App 472,
> 477; 481 NW2d 807 (1992). If there is an "integral parts of
> the highway" exception under the broad concept of "traffic
> sign maintenance" that includes erecting signs or warning
> devices at points of hazard, it appears to conflict with the

very narrow definition of duty that excluded street lighting in *Scheurman*. Because we can find no way to distinguish between street lighting and traffic signs, and because both have their physical structure outside the traveled or paved portion of the roadbed, we must conclude that the defendant is not subject to liability for the alleged lack of adequate traffic signs at the intersection of Roosevelt and Crapo Roads.

Affirmed. [203 Mich App 141.]

The dissenting judge on the panel "disagree[d] with the majority's conclusion that this case is controlled by the limited definition of an improved roadway set forth in *Scheurman* . . . . While the Supreme Court in *Scheurman, supra* at 633, may have clearly stated that there is no duty to provide street lighting because it is not part of the improved portion of a roadway, it did reserve its decision with respect to the duty to post and maintain traffic signs, citing the previous case of *Salvati v State Hwy Dep't*, 415 Mich 708; 330 NW2d 64 (1982)." 203 Mich App 142 (citing *Scheurman, supra* at 637, n 29). In the view of the dissenting judge, the circuit court's grant of summary disposition should be reversed and the case remanded for trial.

We granted leave and instructed the parties to "include among the issues to be briefed whether a 'point of hazard' is created by vegetation growing on private property." 448 Mich 930 (1995).

II

As a threshold matter, we think it necessary to clarify exactly what claims are at issue in this appeal. Defendant's brief and oral argument in this Court evidence a mistaken belief that plaintiffs alleged a breach of duty only in regard to the vegetation that

allegedly constitutes a visual obstruction at the intersection where the accident occurred.[5] In fact, as already noted, plaintiffs' complaint also stated the following claims: defective design of the intersection, failure to provide reasonably necessary traffic control devices or warning signs at the intersection, and, generally, failure to properly maintain the intersection so as to be safe for vehicular traffic. Put another way, plaintiffs' claim is that a governmental duty arises under the highway exception with regard to any factors that actually affect reasonably safe vehicular travel on the improved portion of a roadway.

Defendant's position, based on the purported authority of *Scheurman* and *Prokop*, is that no duty of any kind arises under the highway exception in cases where the alleged hazard-creating factor is physically outside the improved portion of the roadbed actually designed for vehicular travel.

III

Properly characterizing it as a question of law for the court to decide, the circuit judge, citing *Scheurman* and *Prokop*, ruled that defendant had no duty with regard to the alleged visual obstructions cited by plaintiffs because those obstructions are "outside the roadway proper." We hold that, under the proper interpretation of all relevant language in the highway exception, the circuit court's ruling was erroneous as a matter of law.[6] Therefore, the Court of Appeals affirmance, on the same basis, is also erroneous.

---

[5] Defendant is correct, however, that plaintiffs have abandoned their claim that defendant had any duty to remove or trim the vegetation.

[6] We wish to emphasize that the only issue properly before us is the legal question whether defendant had any duty relative to the claims set

The Court of Appeals majority went beyond the reasoning of the circuit court, recognizing the possibility that, at least theoretically, there might be "an 'integral parts of the highway' exception under the broad concept of 'traffic sign maintenance' that includes erecting signs or warning devices at points of hazard," but ultimately concluded that such an exception "appears to conflict with the very narrow definition of duty that excluded street lighting in *Scheurman*." 203 Mich App 141.

We hold today that *Scheurman* does not establish authoritative precedent for any such "very narrow definition of duty" and that, in any event, the statutory language of the highway exception, read in its entirety, does not support such a narrow definition.

A

In *Scheurman*, a three-justice plurality would have held that "compliance with the conditions and restrictions of the highway exception statute negates the inclusion of street lighting within the duty of the state because the physical structure of the lights falls outside the traveled or paved portion of the roadbed actually designed for public vehicular travel." 434 Mich 633 (opinion of RILEY, C.J.). In *Prokop*, the companion case, in which the plaintiff's claim was based on the existence of a hedge on private property that obstructed vision at the intersection where the plaintiff was injured, the same plurality concluded: "While the hedge may have interfered with compass-range vision within the intersection, it cannot be catego-

---

forth in plaintiffs' complaint. Specifically, on the basis of plaintiffs' brief and plaintiffs' counsel's response to a question at oral argument, we understand plaintiffs' argument to be that defendant had a duty to warn.

rized as a defective condition upon 'the improved portion of the highway designed for vehicular travel . . . .' " *Id.* at 635. Therefore, the plurality concluded, "liability may not be imposed upon the defendant for a hedge, located on private property, which obstructed the view of travelers." *Id.*[7]

The actual disposition of the plaintiffs' claims in *Scheurman* and *Prokop* was accomplished by Justice BOYLE's concurrence, which stated: "I join in both the rationale and result of the Chief Justice's opinion, with the understanding that it does not preclude the application of MCL 691.1402; MSA 3.996(102) in cases alleging a failure to 'repair and maintain' installations that are integral to, if not part of, the 'improved portion of the highway designed for vehicular travel,' *such as traffic lights and signs.*" *Id.* at 637 (emphasis added).

The concurrence concluded with the following statement: "See *ante,* p 637, n 29." *Id.* This is a reference to note 29 of the plurality opinion, which acknowledged that in *Tuttle v State Hwy Dep't,* 397 Mich 44, 45-46; 243 NW2d 244 (1976), "this Court found the defendant liable for a newly opened intersection that 'was not "reasonably safe and fit for travel" by reason of inadequate signalization.' " In that

---

[7] I am not unaware that I joined this same plurality opinion. Specifically at issue in *Prokop* was which governmental entity had jurisdiction to *remove* the hedge. Justice RILEY concluded:

> Neither the alleged lack of adequate street lighting nor vegetation growing on private property *has any connection to the traveled portion* of the roadbed designed for public vehicular travel. [*Id.* at 636.]

Here, this plaintiff has alleged the existence of a hazard and a direct connection to the traveled portion of the roadbed.

same footnote, the plurality opinion also recognized the relevance of *Salvati, supra,* stating that

> the plurality decision [in *Salvati*] indicates a willingness by the Court to include the duty to post and maintain traffic signs within the highway exception statute. Again, however, neither of the two opinions [i.e., *Tuttle* or *Salvati*], nor any of the cited cases within them, address the issue whether traffic signs fall within the "improved portion of the highway designed for vehicular travel."
>
> Notwithstanding our decision today, we feel it is inappropriate to express an opinion as to the validity of *Tuttle* or *Salvati* at this time. [*Scheurman, supra* at 637, n 29.]

The *Salvati* decision actually comprised two three-justice plurality opinions. The lead opinion favored, in lieu of granting leave to appeal, reversal of the judgment of the lower courts, whose rulings were favorable to the plaintiff, and remand for further proceedings; the other plurality favored denial of leave to appeal or, if leave to appeal was granted, affirmance of the lower courts' judgments.[8] The six justices unanimously agreed, however, that the governmental duty of maintenance with regard to public roads encompassed a duty to provide warning signs:

> A governing unit may incur liability under the broad concept of "traffic sign maintenance" . . . for failing to erect any sign or warning device at a point of hazard, . . . or for placing a sign which inadequately informs approaching motorists of a hazard. [*Salvati,* 415 Mich 715 (COLEMAN, J., joined by FITZGERALD, C.J. and RYAN, J.).]
>
> A governmental agency having jurisdiction of a highway has the obligation to post traffic signs and to warn motorists at points of special danger. Liability may arise for fail-

---

[8] The seventh justice, Justice RILEY, did not participate in the decision.

ing to erect a sign or barrier warning at a point of hazard, or for posting a sign which inadequately warns of an approaching danger. [*Id.* at 721 (LEVIN, J., joined by KAVANAGH and WILLIAMS, JJ.) (citations omitted).]

We recognize that, in a strict sense, the *Salvati* opinions' conclusions in regard to the scope of the governmental duty of maintenance of roadways can be characterized as dicta. However, we are convinced that the reasoning underlying their shared conclusion is convincing and faithful to the true intent of the Legislature in providing the highway exception. Therefore, we expressly hold that a duty to provide adequate warning signs or traffic control devices at known points of hazard arises under the highway exception of the governmental tort liability act,[9] MCL 691.1402; MSA 3.996(102). We also note a more recent conclusion of a majority of this Court: "The highway exception abrogates governmental immunity at 'points of special danger to motorists . . . .'" *Mason v Wayne Co Bd of Comm'rs*, 447 Mich 130, 135; 523 NW2d 791 (1994) (citation omitted).[10]

---

[9] Justice BOYLE's reference to the majority's alleged "conclusion that 'any factors that actually affect reasonably safe vehicular travel on the improved portion of a roadway'. . . state a claim of breach of duty under the highway exception" is a straw man. She quotes from the majority's restatement of our understanding of plaintiffs' claim. The *actual* conclusion we reach is as stated above: "[W]e expressly hold that a duty to provide adequate warning signs or traffic control devices at *known* points of hazard arises under the highway exception . . . ." (Emphasis added.) And our purposeful inclusion of the word "known" in this holding, along with the two explicit references to the strict applicability of the notice requirement, see *infra*, p 621, n 14, and p 624, further undermines the critique of the majority's holding. See BOYLE, J., *post*, p 626.

[10] I concurred separately in *Mason* to distance myself from this same statement only because it was unnecessary to resolution of the precise claim alleged by the plaintiff in that case: a defect in a crosswalk. Such claims are expressly precluded by the statutory language.

B

At the time of the incident at issue in this case, the highway exception stated:[11]

> Each governmental agency having jurisdiction over any highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. Any person sustaining bodily injury or damage to his property by reason of failure of any governmental agency to keep any highway under its jurisdiction in reasonable repair, and in condition reasonably safe and fit for travel, may recover the damages suffered by him from the governmental agency. . . . The duty of the state and the county road commissions to repair and maintain highways, and the liability therefor, shall extend only to the improved portion of the highway designed for vehicular travel and shall not include sidewalks, crosswalks, or any other installation outside of the improved portion of the highway designed for vehicular travel.

The historical development of governmental immunity, generally, and the specific development of the highway exception, have been fully detailed elsewhere (albeit from significantly different perspectives), and are unnecessary to our decision in this case. See *Scheurman, supra* at 626-631; *Chaney v Dep't of Transportation*, 447 Mich 145, 184-193; 523 NW2d 762 (1994) (LEVIN, J., dissenting). We find that the statutory language of the highway exception itself, read in its proper context, is fully adequate for resolution of the precise legal question before us in this case.

The first sentence of this provision establishes the duty to "maintain the highway in reasonable repair so

---

[11] This provision was amended by 1990 PA 278, § 1, in ways not relevant to this case.

that it is reasonably safe . . . for public travel." And the duty of maintenance includes the duty to erect adequate warning signs or traffic control devices at a "point of hazard" (or a "point of special danger"). Therefore, if the alleged impediments to safe vehicular travel on Roosevelt and Crapo Roads cited by plaintiffs are points of hazard,[12] then defendant has a duty to warn motorists,[13] or to otherwise act so as to render travel on the improved portion of the roadway reasonably safe.[14]

Defendant and the lower courts in this case have discerned (not, we acknowledge, wholly implausibly) a bright-line rule of decision that limits governmental responsibility for public roadways to factors that are physically part of the roadbed itself. However, such a rule requires an improperly stringent reading of the highway exception, one that focuses solely on the fourth sentence of that statutory section, and specifi-

---

[12] Justice BOYLE's discussion of causation and of the substantive merits of the question whether a duty was breached in this case is wholly beyond the scope of the narrow holding of the lower courts, the narrow legal issue actually before this Court, and the equally narrow holding of this majority opinion.

[13] Justice BOYLE's creation of a motorist's duty of due care is an unwarranted engraftment onto a statutory provision that addresses only the duty of the relevant governmental entity.

[14] The existence of any such duty is, of course, strictly subject to the notice requirement of the act, MCL 691.1403; MSA 3.996(103), which provides:

> No governmental agency is liable for injuries or damages caused by defective highways unless the governmental agency knew, or in the exercise of reasonable diligence should have known, of the existence of the defect and had a reasonable time to repair the defect before the injury took place. Knowledge of the defect and time to repair the same shall be conclusively presumed when the defect existed so as to be readily apparent to an ordinarily observant person for a period of 30 days or longer before the injury took place.

cally on the phrase "the improved portion of the high-
way." We expressly disavow this selective reading of
the statute. As previously stated by Justice LEVIN, "In
providing, in the fourth sentence of the highway
exception, that the duty 'to repair and maintain high-
ways, and the liability therefor' shall not extend to
'any other installation outside of the improved portion
of the highway designed for vehicular travel,' the Leg-
islature did not [abrogate the] duty, and liability
therefor, under the first two sentences of the highway
exception, to repair and maintain the improved por-
tion of the highway designed for vehicular travel in
condition reasonably safe and fit for travel . . . ."
*Chaney, supra* at 193-194.

In gleaning the true scope of the highway exception
to governmental immunity from the entire statutory
provision and our undeniably fractured case law
precedents, we do, in fact, derive some guidance from
*Scheurman*:

> It seems clear even from a literal reading that the
> "improved portion" language of § 2 does not distinguish the
> surface of the highway as opposed to conditions other than
> the surface of the highway which may well foreclose the
> highway from being "reasonably safe." [434 Mich 641 (opin-
> ion of BRICKLEY, J.).]

A myopic focus on the phrase "the improved portion
of the highway" ignores not only the first two
sentences of the highway exception, but also ignores
the phrase immediately following it: "designed for
vehicular travel." Vehicular travel does not take place
solely on the two-dimensional length and width of the
roadway; rather, it occurs in three-dimensional space,
and necessarily implicates factors not physically

within the improved portion of the roadway itself, factors that can be points of hazard to reasonably safe vehicular travel on the interconnected network of public roadways.

We define "point of hazard" (or "point of special danger") as any condition that directly affects vehicular travel on the improved portion of the roadway so that such travel is not reasonably safe.[15] To be a point of hazard for purposes of the highway exception, the condition must be one that uniquely affects vehicular travel on the improved portion of the roadway, as opposed to a condition that generally affects the roadway and its surrounding environment. We reemphasize, however, that such conditions need not be physically part of the roadbed itself.[16]

C

We turn now to the other basis for the Court of Appeals majority's reliance on *Scheurman,* i.e., that it could "find no way to distinguish between street lighting and traffic signs . . . ." 203 Mich App 141.

The obvious difference between the two, which was expressly acknowledged by the entire Court in *Scheurman,* is that the defendant in *Scheurman* was statutorily excluded from the duty to provide streetlights on the relevant roadways. See *Scheurman,* 434 Mich 632, n 23 (opinion of RILEY, C.J.); *id.* at 651-652 (opinion of BRICKLEY, J.) (both citing MCL 247.651b; MSA 9.1097[1b]).

---

[15] We expressly refute plaintiffs' implied claim that all crossroads intersections intrinsically qualify as points of hazard.

[16] Moreover, we note in passing that the "improved portion" restriction contended for by defendant would require governmental agencies to place warning signs in the traveled portion of roadways. This, obviously, cannot have been the intention of the Legislature.

The other, generally applicable factor that distinguishes street lighting is that darkness is not a condition unique to the three-dimensional space in which vehicular traffic on a roadway occurs.[17]

D

In conclusion, we expressly hold that a duty is imposed on governmental agencies to provide traffic control devices or warning signs at, or in regard to, points of hazard affecting roadways within their jurisdiction. And, as already noted, we emphasize that the issue whether a duty arises under this standard is strictly subject to the notice requirement of § 3 of the act, MCL 691.1403; MSA 3.996(103).

We acknowledge that our prior opinions readily evidence "this Court's badly fractured view of what the Legislature has divined in its efforts to provide this exception," *Chaney v Dep't of Transportation, supra* at 162, n 7 (opinion of BRICKLEY, J.), and that, even in individual cases, we have produced "badly fractured opinions." *Id.* at 178 (opinion of CAVANAGH, C.J.). In this case, we have attempted to clearly state a workable principle that is faithful to the plain language of the highway exception, read in its proper context, and the intent of the Legislature in providing this exception.

---

[17] We also note in this regard that every vehicle operating upon Michigan highways "at any time from a half hour after sunset to a half hour before sunrise and at any other time when there is not sufficient light to render clearly discernible persons and vehicles on the highway at a distance of 500 feet ahead shall display lighted lamps and illuminating devices . . . ." MCL 257.684; MSA 9.2384. Even the number and required intensity of these headlamps is specified by statute. MCL 257.685; MSA 9.2385.

IV

In remanding this case to the circuit court, we make no comment regarding the quality or quantity of the factual evidence presented by the parties. We leave the initial assessment of that evidence to the trial court in the exercise of its inherent discretion to make such evaluations in proceedings pursuant to MCR 2.116(C)(10). See *Skinner v Square D Co*, 445 Mich 153, 163-170; 516 NW2d 475 (1994) (discussing standards by which courts may assess a plaintiff's proofs relative to causation).

Reversed and remanded.

BRICKLEY, C.J., and LEVIN and MALLETT, JJ., concurred with CAVANAGH, J.

BOYLE, J. (*concurring in part and dissenting in part*). As alleged in plaintiffs' complaint and clarified at oral argument, plaintiffs allege three grounds for recovery: defective design of the intersection, failure to place traffic signals or warning signs at the intersection, and failure to post signs at an intersection allegedly obscured on one side by vegetation.[1] The intersection in question is the crossing of two county secondary gravel roads. Plaintiff was traveling east on Roosevelt Road when his vehicle was struck in the intersection by a vehicle traveling south on Crapo Road that failed to yield the right of way.

I conclude that plaintiffs' claims regarding failure to install signals or warnings do not allege breach of a duty to warn of the existence of a point of special hazard to a motorist operating with due care on the improved portion of the highway. I therefore concur

---

[1] The signals and signs claims allege only breach of a duty to install.

in part with Justice RILEY's result, while disagreeing with her rationale. Because I am unprepared to overrule cases recognizing liability for design or construction defects,[2] I agree with Justice CAVANAGH that plaintiffs' allegation survives in respect to that claim and would remand regarding that claim alone.

I write separately to set forth my disagreement with the majority's conclusion that "any factors that actually affect reasonably safe vehicular travel on the improved portion of a roadway," *ante* at 615, state a claim of breach of duty under the highway exception to governmental immunity, MCL 691.1402; MSA 3.996(102), and to disagree with Justice RILEY's rationale that the duty to warn can only arise from "disrepair of the roadbed" itself. *Post* at 654. In my view, an actionable breach of duty might occur where a governmental unit fails to warn of a dangerous condition of the roadway surface that could have been eliminated through discharging the statutory duty to maintain the improved portion of the roadway designed for vehicular travel.

I concede that this case is complicated by the fact that it is postured as a motion granted under MCR 2.116(C)(8) and that the majority's conclusion is defensible as a further illustration to the Legislature of the need to clarify the extent of the highway exception.[3] *Chaney v Transportation Dep't*, 447 Mich 145, 178; 523 NW2d 762 (1994) (CAVANAGH, C.J., con-

---

[2] The parties have not briefed or argued this issue. Beyond passing reference to cases involving such claims, we have not been asked to overrule such authority.

[3] Senate Bill 353, introduced March 1, 1995, would exclude traffic control devices and signs located outside the improved portion of the highway.

curring). I agree with Justice RILEY that the question whether the statutory obligation is to maintain the road in reasonably safe condition, or to use due diligence to keep the road in good repair, has been a problem for the judiciary since the enactment of 1879 PA 244. However, while I agree that the amendment of the statute resolved the question by limiting the duty to the "improved portion of the highway," I cannot agree that the phrase "improved portion of the highway" limited the exception to immunity to a failure to repair.

Acknowledging that there is a duty to erect signs as proper warning devices at points of hazard, *post* at 635, Justice RILEY cannot demonstrate either through legislative history or canons of construction that the duty described in the first sentence of the statute is solely to repair the improved portion of the highway. 1964 PA 170 does not define the duty as a duty to " 'maintain the highway in reasonable repair.' " RILEY, J., *post* at 635. Rather, it specifically defines the duty to "repair and maintain highways." Thus, while Justice RILEY is correct that the second sentence of the statute identifies an injured person's right to recovery and does not define the duty of the agency, her conclusion that the duty extends only to repair is refuted by the fourth sentence of the statute that defines the duty to encompass a duty to repair and maintain the highways. Justice RILEY's analysis of the statutory duty thus collapses the definition of duty in the fourth sentence of the statute, which specifically includes the duty to maintain, into the first sentence, which defines the duty to "maintain the highway in reasonable repair." MCL 691.1402; MSA 3.996(102).

Thus, while the duty extends only to the improved portion of the highway, the Legislature included within the exception the duty to keep the roadbed surface travel worthy by repairing and maintaining it. In adding the words "improved portion of the highway," the Legislature may have intended to reject a duty to keep the road in reasonably safe condition, and reached a compromise regarding the duty to keep the road in good repair. The duty imposed would appear to be to maintain the highway either by repairing the highway or warning motorists using the highway of a dangerous condition of the roadway itself.

This interpretation is consistent with a narrow reading of the exception, with the results in both *Scheurman v Transportation Dep't,* 434 Mich 619; 456 NW2d 66 (1990), and its companion case, *Prokop v Wayne Co Bd of Rd Comm'r,* and it is also consistent with cases such as *Joslyn v Detroit,* 74 Mich 458; 42 NW 50 (1889), *Longstreet v Mecosta Co,* 228 Mich 542; 200 NW 248 (1924), and *Jewell v Rogers Twp,* 208 Mich 318; 175 NW 151 (1919), in which liability was imposed for the failure to continue the road in the condition it had been maintained or failure to warn of any changes in the road that created a dangerous condition.

It is also consistent with the notice requirement of the act. MCL 691.1403; MSA 3.996(103). The notice requirement not only gives the government notice of a defect so it can remedy it, it also charges it with the duty of giving an appropriate warning if the hazard created by the condition of the roadway cannot be

readily repaired or is not amenable to repair or redesign.[4]

Defining a point of hazard as requiring the government to install warnings to exclude dangers arising from a condition of the highway that would not be reasonably apparent to a person exercising due care is also consistent with Justice COLEMAN's explanation of a point of hazard in *Salvati v State Hwy Dep't*, 415 Mich 708; 330 NW2d 64 (1982).

In *Salvati*, the breach of duty alleged was the inadequacy of two signs bearing "WATCH FOR ICE ON BRIDGE," and in not having a flashing light or a message directing the driver to reduce speed. Justice COLEMAN wrote to reverse the verdict, finding that the two reflectorized signs were adequate to warn that

> a hazardous condition existed on the bridge, so as to enable [the driver] in the exercise of ordinary care, to avoid injury. We will not require of defendant more than what is reasonable under the circumstances; nor will we make defendant an insurer of the travelers of the roadway. [*Id.* at 716.]

Less important, but of interest, is that such an approach is consistent with the statutory schemes of other states that absolve the government of liability for failure to install signs or signals, while imposing a duty to erect signs and adequate markings to warn against extremely dangerous trap-like hazards, unusual obstructions, or defects in the road, *Burkett v Honeyman*, 561 So 2d 857 (La App, 1990). *Dep't of Transportation v Caffiero*, 522 So 2d 57 (Fla App,

---

[4] Preferential icing, which is noted in the amicus curiae brief of the Michigan County Road Commission Self-Insurance Pool, p 34, as an example of the duty to warn, is an obvious example. Bridges are subject to preferential icing, but they may not be amenable to redesign.

1988). Thus, for example, § 830.8 of the California Government Code, enacted a year before adoption of the improved portion of the highway language here in question, provides that a public entity is not exonerated for failure to erect a signal sign or marking device "necessary to warn of a dangerous condition which endangered the safe movement of traffic and which would not be reasonably apparent to, and would not have been anticipated by, a person exercising due care." *Washington v San Francisco*, 219 Cal App 3d 1531, 1535, n 3; 269 Cal Rptr 58 (1990). See also New Jersey Stat 59:4-4, discussed in *Civalier v Trancucci*, 138 NJ 52; 648 A2d 705 (1994).

I would hold that the government is not obligated to erect a warning at an uncontrolled intersection on secondary gravel roads. The intersection is not a point of special hazard, nor does a limited ability to make observations on one side of the road caused by trees or vegetation make it so. In the former case, the nature of the intersection is apparent to a driver using due care. In the latter, the limited range of vision is itself a warning that due care must be maintained. *Ortega v Lenderink*, 10 Mich App 190; 159 NW2d 140 (1968). Further, the dangers presented by such an intersection do not arise from the condition of the roadway itself.

The decision to provide traffic devices that have not been determined to be necessary, *Tuttle v State Hwy Dep't*, 397 Mich 44; 243 NW2d 244 (1976), is within the discretion of highway authorities. MCL 257.608; MSA 9.2308. To construe the statute to impose a duty to erect signs at ordinary intersections on flat terrain, or at such intersections where vision is partially obscured, would be to construe the statute

to wholly undermine that discretion. It follows that the duty to warn must be limited. To fail to do so would make the state an insurer of highway safety, and dismantle the highway exception.

Additionally, while it is well established that there may be more than one proximate cause of an injury, application of that principle in the context of a claim of injury because a lack of a warning that would have made the road safer would convert proximate cause analysis into a highly speculative inquiry. It is one thing to allege that an unknown or undiscoverable point of hazard was the factual cause of a motoring injury, and quite another to say that failure to warn of the danger of an intersection where vision is partially obstructed by vegetation is a factual cause of an accident in the intersection. As Judge MARKMAN recently observed in *Wechsler v Wayne Co Rd Comm*, 215 Mich App 579; 546 NW2d 690 (1996), if the accident was caused by another driver's failure to follow the law and yield the right of way, concluding that the offending driver would have paid more attention to a sign saying, "yield," or a traffic light, necessarily implicates the causation analysis of *Skinner v Square D Co*, 445 Mich 153; 516 NW2d 475 (1994). Stated otherwise, if the driver that struck plaintiffs' car proceeded into the intersection without observation and failed to yield the right of way, it is difficult to see how a sign would have prevented the danger. If the offending driver's vision was blocked by vegetation, as alleged, that did not give him the right to enter the intersection and attempt a maneuver that would put him in the path of oncoming traffic.[5]

---

[5] Plaintiffs did not claim that the intersection was not visible.

Whatever else "the improved portion of the high-
way" means, we must give it some meaning. For the
reasons stated, I would hold that a claim of failure to
erect signs at an open intersection and a claim that
vision was obstructed at such an intersection by vege-
tation on private property do not, as a matter of law,
constitute an allegation of a breach of the govern-
ment's duty to warn plaintiffs of a point of hazard
originating on the roadway. Every intersection may be
dangerous, but courts do not have the authority to
expose the government to tort liability for every situa-
tion that presents a potential for harm. As observed
in *Wayne Co Rd Comm*, *supra* at 595, "Such a con-
struction would impose a burden upon the public
treasury that, if it is to be imposed, must be imposed
only by the representative institutions of govern-
ment."

The openness of the intersection and the vegetation
do not constitute a hazardous condition of the road-
way surface as a result of improper maintenance of
the roadway surface itself. A sign might make the
intersection safer, but government is not the insurer
of highway safety.[6]

I would affirm the trial court's dismissal in all
respects save that alleging a design defect.

Riley, J. (*dissenting*). Because I do not believe that
the majority's conclusion is faithful to the language

---

[6] Examples of failures to maintain that may require warnings as listed
by the Michigan County Road Commission amicus curiae brief, *supra*, pp
33-34, are advance warning of a curve when the geometrics and design of
the road is such that a person driving the speed limit could not safely
negotiate the curve, "limited stopping sight distance," preferential icing,
and a T-shaped intersection that ends abruptly "with no warning" at the T-
intersection.

and purpose of the highway exception to the governmental immunity statute, I respectfully dissent. Consistent with this Court's ruling in *Scheurman v Transportation Dep't*, 434 Mich 619; 456 NW2d 66 (1990), I would hold that the highway exception, MCL 691.1402; MSA 3.996(102), does not expose the state or a county to liability for alleged defects that arise outside the improved portion of the highway designed for vehicular travel. Plaintiffs argue on appeal that the Gratiot County Road Commission failed to place adequate signs warning motorists of the special danger presented by both (1) the unmarked intersection and (2) a nearby apple orchard that allegedly obscured a traveler's view of the intersection. There was no allegation that there was a defect in the surface of the traveled roadbed itself, i.e., the improved portion of the highway, and, consequently, there was no claim that the road commission failed to repair or maintain the improved portion of the highway. Hence, I would affirm the Court of Appeals decision upholding the grant of summary disposition in favor of the road commission as a matter of law under MCR 2.116(C)(8).

ANALYSIS

I. STATUTORY INTERPRETATION

A

Under MCL 691.1407; MSA 3.996(107), all governmental agencies are immune from tort liability while performing a governmental function, unless the activity falls within one of the narrowly drawn exceptions. *Mason v Wayne Co Bd of Comm'rs*, 447 Mich 130, 134; 523 NW2d 791 (1994); *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567, 618; 363 NW2d 641

(1984).   One of the narrow exceptions, MCL 691.1402(1);  MSA 3.996(102)(1),  enables a person to recover against a governmental agency for an injury arising from the use of public highways:

> Each governmental agency having jurisdiction over any highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. Any person sustaining bodily injury or damage to his or her property by reason of failure of any governmental agency to keep any highway under its jurisdiction in reasonable repair, and in condition reasonably safe and fit for travel, may recover the damages suffered by him or her from the governmental agency. The liability, procedure and remedy as to county roads under the jurisdiction of a county road commission shall be provided in [MCL 224.21;  MSA 9.121]. The duty of the state and the county road commissions to repair and maintain highways, and the liability therefor, shall extend only to the improved portion of the highway designed for vehicular travel and shall not include sidewalks, crosswalks, or any other installation outside of the improved portion of the highway designed for vehicular travel.

The resolution of the controversy in this case depends on the proper interpretation of this statute.[1]

B

Citing the reasoning of *Salvati v State Hwy Dep't,* 415 Mich 708; 405 NW2d 856 (1982),  the majority

---

[1] If a statute is unambiguous, this Court may not engage in judicial construction, but must apply the statute as written. *Turner v Auto Club Ins Ass'n,* 448 Mich 22, 27; 528 NW2d 681 (1995);  *Coleman v Gurwin,* 443 Mich 59, 65; 503 NW2d 435 (1993). This Court accords statutory language its ordinary and generally accepted meaning. *Turner, supra* at 27; *Mull v Equitable Life Assurance Society of the United States,* 444 Mich 508, 514, n 7; 510 NW2d 184 (1994). However, where the meaning of the statute is unclear, judicial construction is necessary. *Turner, supra* at 27.

concludes that under the highway exception a governmental agency has a "duty to provide adequate warning signs or traffic control devices at known points of hazard . . . ." *Ante* at 619. I agree that the exception creates a duty to erect signs or proper control devices at points of hazard, but only when these hazards arise from the failure of the state or county to "maintain the [improved portion of the] highway [designed for vehicular travel] in reasonable repair . . . ." MCL 691.1402(1); MSA 3.996(102)(1). The hazard must result from the governmental agency's failure to fulfill its statutory duty.

In contrast, the majority expands the meaning of this duty beyond that created by the Legislature by defining a "point of hazard" as "*any* condition that directly affects vehicular travel on the improved portion of the roadway so that *such travel is not reasonably safe.*" *Ante* at 623 (emphasis added). In so defining this phrase, the majority has interpreted the statute as establishing a governmental duty to ensure that the improved portion of a highway is "reasonably safe and fit for travel," which is a more burdensome duty than to merely "maintain the [improved portion of the] highway [designed for vehicular travel] in reasonable repair . . . ." MCL 691.1402(1); MSA 3.996(102)(1). This is not consistent with a narrowly drawn interpretation of the statute. See *Mason, supra* at 134.

The majority rightly notes that the first sentence of MCL 691.1402(1); MSA 3.996(102)(1) establishes the governmental agency's duty. The Legislature only required that the government "maintain the highway in reasonable repair . . . ." This is the statement of the duty. The Legislature created this duty to achieve

a particular end "so that [the highway] is reasonably safe and convenient for public travel." *Id.* This is the value that the Legislature hoped to realize by creating the duty. However, the statutory duty is not violated whenever the statute's end is not achieved. In other words, there is not a violation of this duty by the lone fact that a highway is not "reasonably safe and convenient for public travel." *Id.* The Legislature did not require that the governmental agency ensure that all highways were reasonably safe. Only when the governmental agency fails to "maintain the highway in reasonable repair" is there a violation of the statute.

In support of its reasoning, the majority refers to Justice LEVIN's dissent in *Chaney v Transportation Dep't*, 447 Mich 145, 193-194; 523 NW2d 762 (1994), in which he argued that the first two sentences of the statute establish that there is a duty " 'to repair and maintain the improved portion of the highway designed for vehicular travel in condition reasonably safe and fit for travel . . . .' " *Ante* at 622. In *Chaney, supra* at 196-198, Justice LEVIN relied on the statute's second sentence in concluding that a governmental agency has a duty to provide this end (a reasonably safe road), not the mere duty to keep the highway in "reasonable repair." The second sentence of the statute provides that "[a]ny person sustaining bodily injury or damage to his or her property by reason of failure of any governmental agency to keep any highway under its jurisdiction in reasonable repair, *and in condition reasonably safe and fit for travel,* may recover the damages suffered by him or her from the governmental agency." MCL 691.1402(1); MSA 3.996(102)(1) (emphasis added).

This interpretation of the second sentence suffers from the same deficiency as the majority's treatment of the first sentence. Examined in context, the second sentence does not expand the government's obligation established by the first.

The first sentence establishes the governmental agency's duty. The second sentence then identifies an injured person's right to recovery for a breach of that duty. The second sentence accomplishes this goal by providing for recovery when the governmental agency fails to keep the highway in "reasonable repair, and in condition reasonably safe . . . ." MCL 691.1402(1); MSA 3.996(102)(1). The comma placed after "reasonable repair" divides the government's duty ("maintain" in "reasonable repair") from the end this duty is intended to secure (a "reasonably safe" road). The point of identifying the statute's desired end with the duty it created in this sentence is to indicate that a person will recover only when the government's failure to perform its duty creates an unsafe condition. Thus, even if there is a breach of the duty (failure to maintain in reasonable repair), an injured person will not recover unless the breach of the duty created an unsafe condition. The interpretation that the majority posits when it adopts Justice LEVIN's analysis ignores the significance of this comma and the preceding text.[2]

---

[2] If the majority were right, the second sentence should read:

Any person sustaining bodily injury or damage to his or her property by reason of failure of any governmental agency to keep any highway under its jurisdiction in reasonable repair and in condition reasonably safe and fit for travel may recover the damages suffered by him or her from the governmental agency.

The strict interpretation is confirmed by subsequent text in the highway exception's fourth sentence, which provides: "[t]*he duty* of the state and the county road commissions *to repair and maintain highways*, and the liability thereof, shall extend only to the improved portion of the highway designed for vehicular travel . . . ." MCL 691.1402(1); MSA 3.996(102)(1). The duty is reiterated. Using the ordinary meaning of these terms, the state and county road commissions, as governmental agencies, only have the duty "to repair and maintain" the highways, not the duty to keep the roads reasonably safe. See *Scheurman, supra* at 631 (RILEY, C.J.)[3] ("The purpose of the highway exception is not to place upon the state or the counties an unrealistic duty to ensure that travel upon the highways will always be safe").[4]

With this understanding of the statutory duty, the statute in the fourth sentence states that the duty to repair and maintain "shall not include sidewalks, crosswalks, or any other installation outside of the improved portion of the highway designed for vehicu-

---

Instead, the Legislature sets this clause off by commas, suggesting this understanding:

> Any person sustaining bodily injury or damage to his or her property by reason of failure of any governmental agency to keep any highway under its jurisdiction in reasonable repair, and [in breaching this duty thereby fails to keep the road] in condition reasonably safe and fit for travel, may recover the damages suffered by him or her from the governmental agency.

[3] Joined by CAVANAGH and GRIFFIN, JJ.

[4] See also *Chaney, supra* at 166 (RILEY, J., joined by GRIFFIN, J.) ("[T]he clear and unambiguous language of the statute imposes liability only when the physical highway is unreasonably unsafe *because of physical disrepair of the improved portion of the road designed for vehicular travel*" [emphasis added]). Chief Justice CAVANAGH, writing separately, stated that he also "reluctantly" joined this opinion. *Chaney, supra* at 177.

lar travel," thus limiting this duty to *"only"* the "improved portion of the highway designed for vehicular travel." MCL 691.1402(1); MSA 3.996(102)(1). I believe, as a plurality of this Court stated in *Scheurman, supra* at 631:

> [T]he phrase "improved portion of the highway designed for vehicular travel" refers only to the traveled portion, paved or unpaved, of the roadbed actually designed for public vehicular travel.

*     *     *

> [T]he true intent of the Legislature is to impose a duty to keep the physical portion of the traveled roadbed in reasonable repair. [Citation omitted.]

This conclusion is based on the nature of the duty the Legislature created. The state and county road commissions can only repair and maintain what already exists, what has already been constructed. Consequently, in specifying the improved portion of the highway, the Legislature must have contemplated the maintenance of the integrity of the roadbed's surface, keeping it travel worthy.[5]

---

[5] Thus, I do not agree with the majority that this duty "implicates factors not physically within the improved portion of the roadway itself . . . ." *Ante* at 622-623.

I dispute the claim in Justice BOYLE's concurrence that I have "collapse[d]" the duty recognized by the fourth sentence of the statute with the one created by the first. See *ante* at 627. The duty articulated by the statute's first sentence ("maintain the highway in reasonable repair") and fourth sentence ("repair and maintain highways") are essentially the same. In Justice BOYLE's concurrence, she concludes that "an actionable breach of duty might occur where a governmental unit fails to warn of a dangerous condition of the *roadway surface*" and that this statutory duty to repair and maintain the highway is discharged by "repairing the highway or warning motorists using the highway of a dangerous condition of the *roadway itself.*" *Ante* at 626, 628 (emphasis added). She later concludes that there was no point of hazard in this case, except from the design

C

Consequently, I believe the majority has improperly enlarged the duty from one of repair and maintenance to a duty to keep the traveled portion of the road reasonably safe. I recognize that the majority has attempted to impose a limitation on the application of this expansive interpretation, but I believe this analysis only further confuses the matter. The majority states:

> To be a point of hazard for purposes of the highway exception, the condition must be one that *uniquely* affects vehicular travel on the improved portion of the roadway, as opposed to a condition that *generally* affects the roadway and its surrounding environment. We reemphasize, however, that such conditions need not be physically part of the roadbed itself. [*Ante* at 623 (emphasis added).]

The majority fails to explain clearly what kind of condition "uniquely" affects the roadway and what condition only "generally" affects it. The majority attempts to clarify this distinction by applying it to the facts in *Scheurman* in which this Court ruled that there is no statutory duty for the state to erect a streetlight. The majority explains that "darkness is not a condition unique to the three-dimensional space in which vehicular traffic on a roadway occurs" in describing why the lack of street lighting would not expose travelers

---

defect, because the alleged dangers did "not constitute a hazardous condition of the roadway surface as a result of *improper maintenance of the roadway surface itself.*" *Ante* at 632 (emphasis added). This analysis appears to recognize the same standard I have identified, although Justice BOYLE applies it differently for the design defect claim. Justice BOYLE does not explain why the allegation that the road commission failed to properly design the intersection indicates that there is a defect in the *roadbed surface.*

to a special hazard. *Ante* at 624. I worry that our trial courts will have a difficult time applying this distinction.[6]

This very effort to distinguish between unique and general hazards that arise outside the physical roadbed may provide insight to the Legislature's desire to limit the duty of the state and county only to the obligation to "repair and maintain" the improved portion of the highway. The duty to repair would generally limit the government's liability to cases in which there are defects in the roadbed's surface. In contrast, the Legislature may have feared that it could not anticipate the circumstances in which the state or county would be exposed to liability if the Legislature imposed on it the duty to ensure that travel is reasonably safe on governmental highways.

---

[6] In fact, Chief Justice CAVANAGH himself appeared to recognize this point in his concurring opinion in *Chaney, supra* at 178. In that case, Justice BRICKLEY wrote the lead opinion and offered a very similar interpretation of the highway exception as Justice CAVANAGH does in the present case. Justice BRICKLEY concluded that MCL 691.1402;   MSA 3.996(102) "encompasses (1) installations physically located within that traveled or paved portion of a highway designed for vehicular travel, or (2) *some · installations*, even those physically located beyond the traveled or paved portion of a highway, *that directly and integrally affect safe vehicular travel on this improved portion.*" *Chaney, supra* at 158 (emphasis added). Cf. Justice CAVANAGH's definition of "point of hazard," *ante* at 623. In response to Justice BRICKLEY's interpretation, Justice CAVANAGH concluded:

> Justice BRICKLEY's interpretation does not provide a standard with which to guide both the bench and bar. The test is vulnerable to endless interpretation, encouraging recurrent appellate litigation. [*Chaney, supra* at 178.]

## II. CASE LAW

### A. RECENT CASES

The narrow interpretation required by the statute is consistent with this Court's recent rulings. In a similar case, a plurality of this Court recognized the limitation that the statute's fourth sentence placed on the duty created by the highway exception. See *Scheurman, supra* at 630-631. In *Scheurman, supra* at 623, this Court examined whether the highway exception statute imposed a duty on governmental agencies either to (1) install street lighting to ensure safe travel on the roadway or (2) remove vegetation on private property that allegedly obstructed the view of motorists approaching an intersection. In applying a narrow construction of the statute, the plurality (Riley, C.J., joined by Cavanagh and Griffin, JJ.) concluded that there was no duty to install street lighting "because the physical structure of the lights falls outside the traveled or paved portion of the roadbed actually designed for public vehicular travel." *Id.* at 633. Thus, any alleged hazard did not arise from a defect in the roadbed's surface. Likewise, because the hedge that allegedly obstructed a motorist's view had "no connection" with the roadbed, the Wayne County Road Commission did not have a duty under the statute to ensure that the hedges were trimmed to allow for unobstructed vision while driving. *Id.* at 635.[7]

---

[7] In a concurring opinion in *Scheurman, supra* at 637, Justice Boyle "join[ed] *in both the rationale and result*" of this opinion with the understanding that

it does not preclude the application of [the statute] in cases alleging a failure to "repair and maintain" installations that are integral to, if not part of, the "improved portion of the highway designed for vehicular travel," such as traffic lights and signs. [Emphasis added.]

After *Scheurman,* in 1994, this Court analyzed the highway exception statute in *Mason, supra* at 132-133, where a pedestrian alleged that a county failed to install proper signs and traffic devices at a school crossing for pedestrians, and in *Chaney, supra* at 151, where a driver alleged that the state failed to properly design and construct a concrete bridge abutment and adjoining guardrail adjacent to, but beyond, the shoulder of the road.

In *Mason, supra* at 135-137, this Court concluded that the county was not liable under the highway exception statute because a school crossing is not a danger to vehicles and passengers. This Court explained that the statute definitively excludes from the exception "specific installations whose only rational purposes narrowly service the unique needs of *pedestrians.*" *Id.* at 136 (emphasis added).[8] In *Cha-*

---

There is no dispute in the present case that the Gratiot County Road Commission had not placed any signs at this intersection. Thus, there were no existing signs to "repair and maintain." See also *Chaney, supra* at 152-153, 176-177 (BOYLE, J., concurring) ("The plaintiff's claim is barred by governmental immunity because he does not allege a failure to repair and maintain the paved surface of the roadway or a traffic sign or signal," even though the plaintiff alleged that the transportation department "failed to provide adequate warnings of dangers on the entrance ramp").

[8] As the majority notes, this Court did state in *Mason, supra* at 135 that "[t]he highway exception abrogates governmental immunity except [sic] at 'points of special danger to motorists. . . .' *Grof v Michigan,* 126 Mich App 427, 434; 337 NW2d 345 (1983); *Comerica Bank of Kalamazoo v Dep't of Transportation,* 168 Mich App 84, 86; 424 NW2d 2 (1987)." However, this statement from *Mason* does not, by itself, indicate that the Court departed from the plain meaning of the highway exception statute. Rather, the Court employed the phrase "points of special danger to motorists" in order to emphasize that the highway exception statute was intended to protect *motorists* and not *pedestrians,* the pivotal point of that case. This Court did not hold that there was a duty to post signs for dangers that do not arise from the physical roadbed itself.

Nevertheless, the Court of Appeals cases cited in *Mason* did state that the statute created a duty to post signs even where the state and road commission had kept the road surface in reasonable repair. See *Comerica,*

*ney,* the Court affirmed the Court of Appeals decision by ruling that the Department of Transportation was protected by governmental immunity where the plaintiff's injuries arose from an allegedly defective guardrail even though the plaintiff claimed that the department failed to provide adequate warnings about this danger. See *Chaney, supra* at 152-153. However, there were four opinions among the five justices who concurred in this result.

This Court's ruling in *Mason* (signs for school crossing) and *Chaney* (guardrail) is consistent with a narrow interpretation of the statute, as is this Court's ruling in *Scheurman* (streetlights) and its companion case, *Prokop v Wayne Co Bd of Rd Comm'rs* (hedges on private property that allegedly obscured the view of an intersection). In each of these cases, the alleged defect did not arise from the physical roadbed itself, and this Court concluded that the statute protected the state or county from liability.

---

*supra* at 86-87 (inadequate signage at intersection); *Grof, supra* at 434-435 (inadequate signage at intersection). This conclusion conflicts with the limitations placed in the statute by the Legislature. Consequently, I would overrule these cases insofar as they hold that the statute creates a more burdensome duty.

In other cases, the Court of Appeals has previously reached the conclusion, I believe erroneously, that the public highway exception created a duty to ensure that the road was reasonably safe even if there was no disrepair in the roadbed. See, e.g., *Hutchinson v Allegan Co Bd of Rd Comm'rs (On Remand)*, 192 Mich App 472, 479-480; 481 NW2d 807 (1992) (failure to place guardrail to protect drivers from adjacent ditch); *Hall v State Hwys Dep't*, 109 Mich App 592, 602-603; 311 NW2d 813 (1981) (failure to properly design a median guardrail); *Bennett v City of Lansing*, 52 Mich App 289, 294-295; 217 NW2d 54 (1974) (failure to repair malfunctioning traffic control light); *Lynes v St Joseph Co Rd Comm*, 29 Mich App 51, 54-58; 185 NW2d 111 (1970) (inadequate signage). But see *Alpert v Ann Arbor*, 172 Mich App 223, 230; 431 NW2d 467 (1988); *Zyskowski v Habelmann (On Remand)*, 169 Mich App 98, 103; 425 NW2d 711 (1988) ("The first sentence . . . suggests that only the physical structure of the road itself was contemplated").

Moreover, this interpretation is consistent with this Court's rulings in *Gregg v State Hwy Dep't*, 435 Mich 307, 313-317; 458 NW2d 619 (1990), and *Roy v Transportation Dep't*, 428 Mich 330, 331; 408 NW2d 783 (1987). In *Gregg*, this Court concluded that the statute did not protect the state from liability for a bicycle path that was a part of the improved portion, while in *Roy* this Court concluded that the statute did protect the state from liability for a bicycle path that was detached from the highway because the path did not comprise part of the traveled portion of the highway designed for vehicular travel.

### B. OTHER CASES

In *Scheurman*, the plurality noted at 637, n 29, that it reserved the decision about the continuing vitality of two previous decisions, *Tuttle v State Hwy Dep't*, 397 Mich 44, 45-46; 243 NW2d 244 (1976), and *Salvati, supra*, for another case. In each of these cases, this Court or a plurality of this Court apparently concluded that the highway exception included a duty to erect signs, regardless of whether the hazard arose from the roadbed surface. The present case involves the allegation that the road was unsafe because of the road commission's failure to provide a warning sign or a traffic device, e.g., a stop sign, at the unmarked intersection that was allegedly obscured by a nearby apple orchard. Thus, this is the case that allows this Court to revisit *Tuttle* and *Salvati*.

In *Tuttle, supra* at 45-46, the plaintiff suffered serious injuries when he collided with another vehicle at an intersection he claimed was not reasonably safe because of "inadequate signalization." Sprinkle Road

was a five-lane road with a speed limit of 55 miles per hour that intersected with a two-lane state trunk line with a speed limit of 55 miles per hour. There was a thirty-six-inch reflectorized "stop ahead" sign and a thirty-six-inch reflectorized stop sign on Sprinkle Road at each approach to the intersection. Immediately after opening the intersection, the traffic and safety engineer for the Department of State Highways received reports that people were not stopping, and he determined that the signs were not noticeable. Consequently, he ordered the installation of large black and white cross-hatch backboards to attach to each stop ahead sign and the installation of red and yellow battery-operated flashers for each stop sign and "stop ahead" sign. The department did not carry out these work orders before the accident. The department's supervising electrical service unit had also approved the installation of a traffic signal at the intersection. On the basis of these facts, this Court unanimously decided that the department was negligent for failing to carry out its own orders when it had already determined that the existing stop controls were not sufficiently noticeable. *Id.* at 52.

Yet, the Court in *Tuttle* never examined the highway exception itself to determine whether the department's failure was a breach of its duty to repair and maintain the highway. Instead, it merely assumed that there was a duty to keep the road reasonably safe and fit for travel. See *Tuttle, supra* at 52, n 5. Therefore, the Court did not address the question whether the alleged hazard arose from the surface of the highway because of the department's failure to repair and maintain it. I do not believe this ruling can govern this Court's understanding of the scope of liability

created by the Legislature in the highway exception and would overrule it to the extent that it holds that the state or a county can be liable for inadequate signage at an intersection, when that signage does not identify a hazard related to the state's failure to repair and maintain the improved portion of the highway designed for vehicular travel.

In *Salvati*, the plaintiff alleged that the department failed to post adequate signs alerting motorists of the danger of ice on a bridge road. Each plurality opinion in *Salvati* concluded that the duty of maintenance encompassed a duty to provide warning signs for a "point of hazard," but, as I stated above, I would limit this principle to the circumstance in which the hazard resulted from the state's or county's failure to repair and maintain the roadbed's surface designed for vehicular travel.

Before our ruling in *Scheurman*, this Court also concluded that the duty created by the highway exception includes the obligation to cure any design or construction defect in order to ensure that the road is reasonably safe. See *Killeen v Transportation Dep't*, 432 Mich 1, 4; 438 NW2d 233 (1989); *Peters v State Hwys Dep't*, 400 Mich 50, 53, n 1; 252 NW2d 799 (1977). I do not believe that this statement of the duty under the highway exception is consistent with the language of the statute, nor with the Legislature's intent in limiting liability. See *Killeen, supra* at 19-21 (RILEY, C.J., dissenting).[9] Under a strict reading of the highway exception, the state or a county would only be bound to fix a design or construction defect when

---

[9] "The statute does not impose a duty to repair defects in design or construction." *Id.* at 20.

that defect left the physical surface of the road in disrepair (or not maintained), and thereby unsafe. For example, the state or a county would be responsible for remedying a construction or design defect that allowed a substantial depression to develop in the roadbed's surface because of the agency's failure to ensure that support for the roadbed was girded. Thus, I agree with the result in *Peters, supra* at 52-53, in which the state's failure to repair a defect in the road's drainage system allowed a body of water, up to ten to twelve inches deep, to collect on the road surface. This defect enabled a substantial obstruction to block free travel on the surface of the roadbed, leaving the surface of the roadbed legally in disrepair. However, I would overrule *Killeen* in which the alleged defect was a "superelevation" of the road because the defect did not arise from the physical surface of the roadbed. *Id.* at 5. In the present case, the allegation in plaintiffs' complaint about a design defect was also unrelated to the roadbed's surface.[10]

---

[10] Furthermore, before *Scheurman,* this Court recognized that the highway exception rendered a governmental agency liable for a design or construction defect of a guardrail. See *Endykiewicz v State Hwy Comm,* 414 Mich 377, 380; 324 NW2d 755 (1982); *Arnold v State Hwys Dep't,* 406 Mich 235, 236; 277 NW2d 627 (1979). I do not believe that this conclusion from these cases remains good law after this Court's recent ruling in *Chaney, supra.* Although we issued four opinions among the five justices in the majority, these opinions agreed that the highway exception did not create a duty for the state to properly design and construct the concrete bridge abutment and adjoining guardrail. Rather, we affirmed the Court of Appeals decision upholding the trial court's grant of summary disposition in favor of the Department of Transportation where the plaintiff's injuries arose from an allegedly defective guardrail. See *Chaney, supra* at 161-162 (BRICKLEY, J.), 167-168 (RILEY, J., joined by GRIFFIN, J.), 171 (BOYLE, J.), 177 (CAVANAGH, C.J., joining the opinion of RILEY, J.). Thus, *Endykiewicz* and *Arnold* were effectively overruled on this point.

III. LEGISLATIVE HISTORY

A. PREDECESSOR STATUTES

Finally, I wish to briefly examine this Court's treatment of the highway exception's predecessor statutes to dispel any misapprehension about the significance I believe these cases have for the statute at issue. See *Chaney, supra* at 178-216 (LEVIN, J., dissenting). The present highway exception was enacted under 1964 PA 170. Before 1964, this Court interpreted the predecessor statutes, 1879 PA 244,[11] 1885 PA 214,[12] and

---

[11] Act 244 provided in pertinent part:

[Section 1.] That *any person or persons sustaining bodily injury* upon any of the public highways or streets in this state, *by reason of neglect to keep such public highways or streets, and all bridges, crosswalks and culverts on the same in good repair, and in a condition reasonably safe and fit for travel,* by the township, village, city, or corporation whose corporate authority extends over such public highway, street, bridge, crosswalk or culvert, and whose duty it is to keep the same in good repair, such township, village, city, or corporation shall be liable to, and shall pay to the person or persons so injured or disabled, just damages, to be recovered in an action of trespass on the case, before any court of competent jurisdiction.

\*    \*    \*

[Section 4.] *It is hereby made the duty of townships, villages, cities, or corporations to keep in good repair, so that they shall be safe and convenient for public travel at all times,* all public highways, streets, bridges, crosswalks, and culverts that are within their jurisdiction and under their care and control, and which are open to public travel. [Emphasis added.]

[12] Act 214 amended §§ 1 and 4 of 1879 PA 244 by adding "sidewalks" to the list of public areas that the authorities are responsible for protecting, replaced "good repair" with "reasonable repair," and added the term "reasonably" before "safe and convenient" in § 4. See n 13. This amendment was held to be unconstitutional because certain revisions were not described in the title of the act. *Church v Detroit*, 64 Mich 571, 574-575; 31 NW 447 (1887).

1887 PA 264,[13]  to provide that a municipality ("township, village, city or corporation") was obliged to ensure that the road was in a "reasonably safe" condition.[14]

---

[13] Act 264 superseded the previous act, but reenacted the identical language of §§ 1 and 4 of 1885 PA 214 as §§ 1 and 3. Thus, this act provided in pertinent part:

[Section 1.] That *any person or persons sustaining bodily injury* upon any of the public highways or streets in this State, *by reason of neglect to keep such public highways or streets, and all bridges, sidewalks, cross-walks and culverts on the same in reasonable repair, and in condition reasonably safe and fit for travel* by the township, village, city or corporation whose corporate authority extends over such public highway, street, bridge, sidewalk, cross-walk or culvert, and whose duty it is to keep the same in reasonable repair, such township, village, city or corporation shall be liable to and shall pay to the person or persons so injured or disabled just damages, to be recovered in an action of trespass on the case before any court of competent jurisdiction.

*         *         *

[Section 3.] *It is hereby made the duty of townships, villages, cities, or corporations to keep in reasonable repair, so that they shall be reasonably safe and convenient for public travel,* all public highways, streets, bridges, sidewalks, cross-walks and culverts that are within their jurisdiction, and under their care and control, and which are open to public travel . . . . [Emphasis added.]

[14] See, e.g., *O'Hare v Detroit*, 362 Mich 19, 22; 106 NW2d 538 (1960) (failure to replace a knocked-down stop sign), and cases cited therein at 24; *Malloy v Walker Twp*, 77 Mich 448, 460-464; 43 NW 1012 (1889) (failure to provide a barrier or railings along an embankment); *Joslyn v Detroit*, 74 Mich 458, 460; 42 NW 50 (1889) (the failure to place a sign to alert travelers of an obstruction in the road). See also *Mullins v Wayne Co*, 16 Mich App 365, 373-374; 168 NW2d 246 (1969), and Michigan Supreme Court cases cited therein at 376. But see *McArthur v Saginaw*, 58 Mich 357, 361; 25 NW 313 (1885) ("the statutory liability [from 1879 PA 244] was confined to such defects in streets as arose from their being out of repair, and did not cover objects forming no part of the streets"). See also *McKellar v Detroit*, 57 Mich 158, 160; 23 NW 621 (1885) ("The natural meaning of the act, both in the title and in the body, is to create liability only for having ways out of repair and defective on that account"); *Agnew v Corunna*, 55 Mich 428, 430; 21 NW 873 (1885) ("The statute [1879 PA 244] does not seem to be aimed at indirect and remote mischiefs, but to those which follow from a direct injury caused by the want of repair").

In *McEvoy v Sault Ste Marie*, 136 Mich 172, 176; 98 NW 1006 (1904), this Court recognized that there was a conflict in the cases because the 1879 act was open to two incompatible constructions:

> [O]ne, that it imposed upon municipalities an obligation to use diligence to keep their highways and streets in a condition reasonably safe and fit for public travel; and the other, that it imposed upon municipalities only the obligation to use due diligence to keep their highways and streets in good repair.

This Court decided to embrace the first interpretation, as it had held in *Joslyn v Detroit*, 74 Mich 458; 42 NW 50 (1889), and decided to disregard the analysis, although not necessarily the results, of the conflicting cases, as represented by *McArthur v Saginaw*, 58 Mich 357; 25 NW 313 (1885), among others.[15] I do not quarrel with this holding or with the conclusion that the previous statutes required that a municipality ensure that a road was in a reasonably safe condition. However, the Legislature repealed this statute and, in enacting a new one, substantially changed the duty that it created.

### B. 1964 PA 170

In response to this Court's decision to abrogate common-law governmental immunity for municipalities in *Williams v Detroit*, 364 Mich 231; 111 NW2d 1 (1961), the Legislature enacted the governmental immunity act under 1964 PA 170 in order to restore governmental immunity to municipalities and to provide uniform treatment for state and local agencies.

---

[15] See *McEvoy, supra* at 178-183. See also *Kowalczyk v Bailey*, 379 Mich 568, 571-572; 153 NW2d 660 (1967).

*Ross, supra* at 604-605. The Legislature created exceptions to governmental immunity, including a highway exception under MCL 691.1402; MSA 3.996(102). For the first two sentences of this statute, the Legislature borrowed provisions from 1887 PA 264: the first sentence of the new statute was basically taken from the first sentence of § 3 of 1887 PA 264, and the second from 1887 PA 264's first sentence of § 1.[16] In reestablishing the highway exception, however, the Legislature specifically reduced the scope of liability for the state or a county road commission in the statute's fourth sentence from what it created in the first sentence by eliminating liability for the state

---

[16] In the first sentence of 1964 PA 170, the language of 1887 PA 264 in § 3 ("It is hereby made the duty of townships, villages, cities, or corporations to keep in reasonable repair . . . .") is transformed into "[e]ach *governmental agency* having jurisdiction over any highway shall maintain the highway in reasonable repair . . . ." (Emphasis added.) In the second sentence, the Legislature changed the first sentence of § 1 ("[A]ny person or persons sustaining bodily injury upon any of the public highways or streets in this State, by reason of neglect to keep such public highways or streets, and all bridges, sidewalks, cross-walks and culverts on the same in reasonable repair . . . .") to provide that "[a]ny person sustaining bodily injury or damage to his property by reason of failure of any governmental agency to keep any highway under its jurisdiction in reasonable repair . . . ."

The third sentence states that "liability, procedure and remedy" for county roads would be taken from MCL 224.21; MSA 9.121, which was established under 1909 PA 283. This statute provides in part:

It is hereby made the duty of the counties to keep in reasonable repair, so that they shall be reasonably safe and convenient for public travel, all county roads, bridges and culverts that are within their jurisdiction and under their care and control and which are open to public travel.

In interpreting this provision, the Court of Appeals in *Mullins*, n 14 *supra* at 373-374, relied on *Joslyn, supra,* and concluded that this statute imposes a duty to keep county roads reasonably safe and convenient for public travel. The majority notes that this provision is not at issue in the case before us. See *ante* at 611, n 3.

and counties for "sidewalks, crosswalks, or any other installation outside of the improved portion of the highway." MCL 691.1402(1); MSA 3.996(102)(1). Instead, in this fourth sentence, the Legislature explained that the duty only extended to the "improved portion of the highway designed for vehicular travel."

Moreover, in limiting this liability, the Legislature described the nature of the duty as requiring the state or county only to "repair and maintain" the improved portion of the highway. I believe, in construing this statute narrowly, that this sentence not only limits the scope of liability, but also limits the nature of the duty the Legislature intended to create for these agencies. See part I(B).

### IV. APPLICATION

In applying this properly strict interpretation of the highway exception statute to the facts of this case, I would affirm the Court of Appeals decision to grant summary disposition in favor of the Gratiot County Road Commission.[17] Plaintiffs argue that the commission failed to keep this intersection reasonably safe in two different regards: (1) it did not place adequate signs to warn motorists of the danger of the improperly designed intersection where there were no traffic controls, and (2) it failed to warn motorists of the obstructed vision (a "point of hazard") caused by the apple orchard growing on private property near the intersection.

There is no dispute that the alleged hazard from the lack of traffic controls in this intersection did not

---

[17] 203 Mich App 138, 141; 511 NW2d 694 (1993).

arise from the disrepair of the roadbed (or from a failure to maintain the roadbed), and that the alleged design defect did not compromise the integrity of the roadbed surface. The duties imposed on the state and counties under the highway exception statute do not include the installation and maintenance of signs for dangers that do not arise from a defect in the roadbed. Consequently, the road commission is not subject to liability for the alleged lack of adequate signage at the intersection.

Moreover, the alleged danger due to the apple orchard did not arise from the roadbed. In fact, this Court ruled on almost the identical issue in *Prokop*, the companion case to *Scheurman*. The plaintiff in *Prokop, supra* at 633, argued that the road commission was liable under the statute because it failed to remove a six-foot hedge, located on private property, that obstructed the view of travelers. This Court concluded that there was no liability:

> [T]he indisputable fact is that the hedge in question was on private property and had no connection with the roadbed or public travel thereon. While the hedge may have interfered with compass-range vision within the intersection, it cannot be categorized as a defective condition upon the "improved portion of the highway designed for vehicular travel . . . ." [*Id.* at 635 (RILEY, C.J.).]

Similarly, in this case, I would conclude that there was no liability.

The duty identified by the majority cannot reasonably be reconciled with the result in *Prokop*.[18] Accord-

---

[18] I also note that, contrary to the majority's suggestion, *ante* at 623, the plurality's reasoning in *Scheurman* that the highway exception did not require the state to install street lighting was not based on MCL 247.651b;

ing to the reasoning of the majority, the plaintiff in *Prokop* failed to come under the highway exception as a matter of law merely because she neglected to argue that the hedge created a "point of hazard," like the apple orchard allegedly did in the present case, requiring the road commission to erect a sign to alert drivers of this hazard. Hence, substantially nothing from *Prokop* survives this opinion. I also question whether this Court will need to revisit the result we reached in *Chaney* as a consequence of the majority's decision today.[19]

### CONCLUSION

I believe that the Court of Appeals properly relied on *Scheurman, supra,* in affirming the trial court's decision to grant summary disposition in favor of defendant Gratiot County Road Commission. The statute is unambiguous in creating a governmental duty to repair and maintain only the improved portion of

---

MSA 9.1097(1b) (placing the cost of highway maintenance on the state transportation department, but specifically excluding the maintenance of streetlights). See *Scheurman, supra* at 632 ("we do not believe [§ 1b] to be dispositive of the question[;] [n]or do we believe that it is the issue here").

[19] In rejecting the plurality's reasoning from *Scheurman,* the majority may require the Court of Appeals to revisit questions that it resolved in favor of the state or a county on the basis of *Scheurman* and *Chaney.* See, e.g., *Zwolinski v Transportation Dep't (After Remand),* 210 Mich App 496, 498-499; 534 NW2d 163 (1995) (failure to install a guardrail along a steep slope of an adjoining embankment); *Fortunate v Transportation Dep't,* 208 Mich App 467, 468; 528 NW2d 743 (1995) (failure to design a pedestrian bridge to prevent people from throwing concrete blocks at cars); *Colovos v Transportation Dep't,* 205 Mich App 524, 525; 517 NW2d 803 (1994) (failure to provide adequate warning signs for danger presented by ice on a bridge); *Fogarty v Transportation Dep't,* 200 Mich App 572, 573; 504 NW2d 710 (1993) (grassy median); *Coluccelli v Wayne Co,* 196 Mich App 387, 389-390; 493 NW2d 439 (1992) (guardrail on grassy median); *Soule v Macomb Co Bd of Rd Comm'rs,* 196 Mich App 235, 237-238; 492 NW2d 783 (1992) (failure to construct a shoulder).

the highway designed for vehicular travel. This conclusion is faithful to the plain meaning of the provision defining the scope of the duty of the state and counties. Consequently, the state or a county road commission would only be liable when its failure to repair or maintain the improved portion of the highway, i.e., the physical structure of the roadbed surface, causes an injury. There is no obligation to warn motorists about dangers that do not arise from the condition of the roadbed itself. Hence, the Gratiot County Road Commission is protected from liability as a matter of law because plaintiffs' claims about the alleged dangers (an upcoming intersection and an apple orchard obstructing the motorists' view) were unrelated to the highway roadbed itself. I would affirm.

WEAVER, J., concurred with RILEY, J.